2021 PA Super 54

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JONATHAN RIVERA | : | |
| | : | |
| Appellant | : | No. 1788 MDA 2019 |

Appeal from the Judgment of Sentence Entered September 26, 2019
In the Court of Common Pleas of Bradford County Criminal Division at
No(s):  CP-08-CR-0000606-2018

BEFORE:  LAZARUS, J., KUNSELMAN, J., and MURRAY, J.

OPINION BY LAZARUS, J.:                    **FILED MARCH 29, 2021**

Jonathan Rivera appeals from the judgment of sentence, entered in the Court of Common Pleas of Bradford County, after a jury convicted him of four counts of corruption of minors—course of conduct;[1] three counts of indecent assault—person less than 13 years of age;[2] two counts of indecent exposure;[3] and one count each of criminal attempt to commit indecent assault—person less than 13 years of age,[4] and endangering the welfare of a child (EWOC).[5]

---

[1] 18 Pa.C.S.A. § 6301(a)(1)(ii).

[2] 18 Pa.C.S.A. § 3126(a)(7).  Counts 21 and 22 were graded as third-degree felonies.  Count 24 was graded as a first-degree misdemeanor.

[3] 18 Pa.C.S.A. § 3127(a).

[4] 18 Pa.C.S.A. §§ 901, 3126(a)(7).

[5] 18 Pa.C.S.A. § 4304(a)(1).

After careful review, we affirm in part, vacate in part and remand. Specifically, because the Commonwealth's amendment to the criminal information unfairly prejudiced Rivera, we vacate Rivera's convictions under Counts 21 and 22, and remand for a new trial. Additionally, because the jury did not find that Rivera's EWOC conviction was the result of a course of Rivera's conduct or that his actions resulted in a substantial risk of death or serious bodily injury, we remand for resentencing on Count 15. We affirm Rivera's remaining convictions.

On April 17, 2018, F.M.[6] recorded a video in which her daughter, G.R.,[7] accused Rivera of various acts constituting criminal sexual assault. The next day, F.M. recorded another video in which her niece, C.P.,[8] accused Rivera of similar inappropriate behavior. F.M. then took these videos to the police,

---

[6] F.M. is G.R.'s mother and K.M.'s sister. K.M. is C.P.'s mother. K.M. lived with Rivera and C.P. at the time of the initial police reports.

[7] G.R., born in October of 2010, was seven years old at the time of the initial police report. G.R. alleged that Rivera committed multiple acts including anally penetrating her, telling her to touch his privates, exposing himself to her, and choking her with a lollipop. As discussed *infra*, Counts 2, 3, 6, 7, 14, 16, 21, and 25 of the Commonwealth's charges, naming G.R. as the victim, alleged a continuing course of conduct dating from January 1, 2009, which predated G.R.'s birth by nearly two years.

[8] C.P., born in March of 2010, was eight years old at the time of the initial police report. C.P. alleged that Rivera anally penetrated her, touched her privates with his private, and exposed himself to her. As discussed *infra*, Counts 4, 5, 8-11, 17, 22, and 26, naming C.P. as the victim, alleged a continuing course of conduct dating from January 1, 2009, which predated C.P.'s birth by nearly one year.

which led to the discovery of two additional child victim complainants, S.C.[9] and S.M.[10]

On September 7, 2018, the Commonwealth charged Rivera with: Count 1—aggravated assault[11] (victim G.R.); Counts 2 and 3—rape of a child[12] (victim G.R.); Counts 4 and 5—rape of a child (victim C.P.); Counts 6 and 7—involuntary deviate sexual intercourse[13] (IDSI) (victim G.R.); Counts 8 and 9—IDSI (victim C.P.); Counts 10 and 11— attempted aggravated indecent assault[14] (victim C.P.); Counts 12 and 13—attempted aggravated indecent assault (victim S.M.); Count 14—attempted aggravated indecent assault (victim G.R.); Count 15—EWOC (victim G.R.); Counts 16, 17, 18, and 19—

---

[9] S.C., born in February of 2008, is K.R.'s daughter. K.R. was married to Rivera, and the trio lived together for approximately three years. S.C. alleged that Rivera rubbed her doll against his private parts and touched S.C. inappropriately on her butt, over her clothing. S.C. was of elementary school age when she lived with Rivera in Pennsylvania, but the Commonwealth alleged the criminal acts commenced when S.C. was eleven months old.

[10] S.M., born in March of 2003, testified that Rivera was her uncle's friend. S.M. lived and visited with that uncle in Scranton, Pennsylvania, on multiple occasions in 2009, when she was six years old. S.M. alleged that Rivera touched her inappropriately between four and nine times, once putting his hands inside her underwear, and another time rubbing her stomach until she fell asleep, after she woke up to find him on her bedroom floor apparently looking for something.

[11] 18 Pa.C.S.A. § 2702(a)(1).

[12] 18 Pa.C.S.A. § 3121(c).

[13] 18 Pa.C.S.A. § 3123(b).

[14] 18 Pa.C.S.A. § 3125(a)(7).

corruption of minors (victims G.R., C.P., S.C., and S.M., respectively); Count 20—simple assault[15] (victim G.R.); Counts 21, 22, 23, and 24—indecent assault of a child (victims G.R., C.P., S.C., and S.M., respectively); and Counts 25 and 26—indecent exposure (victims "two female juveniles").

On January 14, 2019, the court dismissed Count 13 as duplicative of Count 12, and further ordered the Commonwealth to identify the complainants for Counts 25 and 26. On July 31, 2019, mere days before the scheduled trial, the Commonwealth—apparently disregarding the fact that the court had already dismissed Count 13—moved to amend the information by changing the location of Counts 12 and 13 and specified the victims for Counts 25 and 26, as G.R. and C.P., respectively. The court commenced a jury trial on August 6, 2019.

At trial, the Commonwealth called Pennsylvania State Trooper Christopher Higdon to testify, and asked him if Rivera, having been read his *Miranda*[16] warnings after his arrest, denied the charges against him. Trooper Higdon, over defense counsel's objection, testified that Rivera did not deny committing the offenses. *See* N.T. Jury Trial, 8/6/19, at 101-02.

The Commonwealth rested its case-in-chief on August 7, 2019. The defense began presentation of its witnesses that same day. On August 8, 2019, the court dismissed Counts 10, 11, and 14, after the Commonwealth

---

[15] 18 Pa.C.S.A. § 2701(a)(1).

[16] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

agreed that it had proffered insufficient evidence to prove those charges. Additionally, the court permitted the Commonwealth to amend Counts 12, 21, and 22, by changing the latter two counts from first-degree misdemeanors, charged pursuant to subsection 3126(b)(3), to third-degree felonies, charged pursuant to subsection 3126(b)(3)(iii). *See* N.T. Jury Trial, 8/8/19, at 7-9.

On August 8, 2019, the jury returned a verdict acquitting Rivera of Counts 1-9, 20, and 23, and convicting Rivera of Counts 12, 15, 16-19, 21, 22, and 24-26. At the sentencing hearing held on September 26, 2019, the court sentenced Rivera to an aggregate term of eight to fifty-two years' incarceration. Rivera filed a timely notice of appeal; both he and the court have complied with Pa.R.A.P. 1925.

Following our grant of two extensions of time, *see* Order, 4/13/20;[17] Order, 6/12/20,[18] Rivera filed his appellate brief on July 6, 2020. Having also been granted an extension, *see* Order, 7/31/20,[19] the Commonwealth filed its appellate brief on September 4, 2020. We subsequently granted two more

---

[17] Without opposition from the Commonwealth, Rivera requested, and this Court granted, a 60-day extension to file his appellate brief. We ordered Rivera to file his brief on or before June 22, 2020.

[18] On June 10, 2020, Rivera, requested a 14-day extension, which the Commonwealth did not oppose. We granted the request and ordered that Rivera file his brief no later than July 6, 2020.

[19] We granted the request and ordered the Commonwealth to file its brief on or before September 4, 2020.

extensions, *see* Order, 9/22/20,[20] Order, 10/15/20,[21] after which Rivera filed a reply brief on November 13, 2020.  On November 23, 2020, we continued the case pursuant to Rivera's application for a continuance.[22]

On January 14, 2021, we ordered the parties to submit supplemental briefs on or before January 28, 2021, to "specifically address how the Supreme Court's decision in **Commonwealth v. McClelland**, 233 A.3d 717 (Pa. 2020), applies to the instant case."[23]  Order, 1/14/21.  Both parties complied.

_____

[20] We granted the request and ordered Rivera to file his reply brief on or before October 30, 2020, and noted that no further extensions would be granted.

[21] We granted Rivera's request for an extension and ordered Rivera to file his reply brief on or before November 13, 2020, again noting that no further extensions would be granted.

[22] We granted Rivera's application for continuance, ordering the Harrisburg Prothonotary's Office to list it for the next available argument panel, in order to accommodate Rivera's attorney.  The Prothonotary complied, at which point this panel assumed jurisdiction over this case and listed it for remote video-teleconference argument on February 4, 2021, due to the ongoing COVID-19 pandemic.

[23] The parties agree that the Commonwealth proved its *prima facie* case at Rivera's preliminary hearing by relying solely on hearsay evidence.  **See** N.T. Preliminary Hearing, 8/17/18.  In **McClelland**, our Supreme Court held that the Commonwealth may not establish a *prima facie* case against a defendant relying on hearsay evidence alone, *id.* at 722, reversing the previous rule set forth in **Commonwealth v. Ricker**, 120 A.3d 349 (Pa. Super. 2015).  Rivera raised the issue of the adequacy of the Commonwealth's *prima facie* case in his Rule 1925(b) statement, but abandoned it in his original appellate brief. The trial court's Rule 1925(a) opinion addressed the issue, but relied on **Ricker** in recommending we find no error.  We note that our Supreme Court published the **McClelland** decision on July 21, 2020, after Rivera's case was already on appeal.  Subsequent to our supplemental briefing order, Rivera argued that his failure to raise the issue in his appellate brief did not result in

Following our review of the Supreme Court's decision in **McClelland**, the parties' briefs, relevant case law, and the certified record on appeal, we find that the Supreme Court did not intend to extend **McClelland**'s holding to cases such as this one, where the complained-of defect in the preliminary hearing is subsequently cured at trial. **Cf. Commonwealth v. Ballard**, 460 A.2d 1091, 1092 (Pa. 1987) ("A finding at a preliminary hearing that sufficient evidence exists to require a defendant to stand trial is not subject to review if there has been a subsequent independent judicial judgment that there is sufficient evidence to require the defendant to stand trial."); **Commonwealth v. Tyler**, 587 A.2d 326, 328 (Pa. Super. 1991) (purpose of preliminary hearing is not to prove guilt but to avoid defendant's incarceration or trial unless sufficient evidence establishes crime was committed and probability that defendant was involved; "**Once** [**an**] **appellant has gone to trial and been found guilty of the crime, any defect in the preliminary hearing is rendered immaterial**[.]") (emphasis added; internal citation omitted); **Commonwealth v. Mignogna**, 585 A.2d 1, 4 (Pa. Super. 1990) (deficiency in evidence at preliminary hearing cured where trial judge determines trial evidence is sufficient for submission to jury).

---

waiver because it would have been futile for Rivera to raise the issue where, at the time of the preliminary hearing, **Ricker** was governing law. **See** Appellant's Supplemental Brief, at 4-9. Nevertheless, for the reasons noted in this decision, we find we cannot apply **McClelland** retroactively to the instant case.

Here, because the Honorable Evan S. Williams, III, determined that the Commonwealth's trial evidence was sufficient to submit Rivera's case to the jury, any defect that existed in the evidence proffered at Rivera's preliminary hearing was subsequently cured. *See Ballard*, *supra*, *Tyler*, *supra*, and *Mignogna* , *supra*; *cf. McClelland*, *supra* at 725 (interlocutory appeal taken from pre-trial order denying motion seeking writ of habeas corpus); *Commonwealth ex rel. Buchanan v. Verbonitz*, 581 A.2d 172, 173 (Pa. 1990) (appeal taken from pre-trial order denying motion seeking writ of habeas corpus). Moreover, Rivera fails to argue that the defect in the evidence at the preliminary hearing tainted the validity of the verdict. *See Mignogna*, *supra* at 4 ("[A] defendant must establish the existence of actual prejudice arising from a denial of due process at the preliminary hearing in order to be afforded the remedy of discharge."); *cf.* Appellant's Supplemental Brief, at 10 ("[The defects [alleged here by Rivera] are of a type that require reversal **without a showing of prejudice**.") (emphasis added). Therefore, we will not consider any deficiency in the Commonwealth's evidence that may have existed prior to this case's submission to the jury, and we will proceed to address the issues Rivera raises on appeal.

On appeal, Rivera presents the following issues for our review:

1. Whether the trial court committed reversible constitutional error when it admitted testimony commenting on Mr. Rivera's post-arrest, post-*Miranda*, exercise and assertion of his right to silence?

2. Whether the trial court erred by permitting the Commonwealth to amend the [i]nformation to add new felony offenses on the last

day of trial, after the defense case was underway, and the defendant was prejudiced by the amendment?

Appellant's Brief, at 5.

First, Rivera claims that he is entitled to a new trial because the court admitted evidence of his post-arrest and post-**Miranda** silence, in violation of his constitutional rights to remain silent under the 5th and 14th Amendments of the United States Constitution, and Article 1, Section 9 of the Pennsylvania Constitution. **See** Appellant's Brief, at 31-43; **see also** Appellant's Reply Brief, at 1-15. Specifically, Rivera argues that the court permitted the Commonwealth to place evidence into the record in contravention of our Supreme Court's decision in **Commonwealth v. Turner**, 454 A.2d 537 (Pa. 1982), wherein our Supreme Court stated that, to admit evidence of the defendant's post-arrest silence:

> [T]he Commonwealth must seek to **impeach** a defendant's relation of events **by reference only to inconsistencies as they factually exist**, not to the purported inconsistency between silence at arrest and testimony at trial. Silence at the time of arrest may become a factual inconsistency **in the face of an assertion by the accused while testifying at trial that he related this version to the police at the time of arrest** when[,] in fact[,] he remained silent.

**Id.** at 539-40 (citing **Doyle v. Ohio**, 426 U.S. 610 (1976)) (emphasis added). Rivera claims that his counsel's questioning of Trooper Higdon, on cross-examination, inquired into the completeness of the Trooper's pre-arrest investigation as well as the Commonwealth's bases for seeking Rivera's arrest, rather than inquired into whether Rivera denied the allegations against him at the time of his arrest. Restated, Rivera claims that the Commonwealth

improperly relies on the defense question that related to Rivera's pre-arrest statements in asserting that a factual inconsistency existed at trial regarding Rivera's alleged post-arrest denial of the criminal charges against him.

The Commonwealth relies on our Supreme Court's decision in **Commonwealth v. Copenhefer**, 719 A.2d 242 (Pa. 1988), where the Court found the prosecutor's reference to the defendant's post-arrest silence was a "fair response" and did not violate the defendant's constitutional right to remain silent where the defendant raises a factual inconsistency at trial. **Id.** at 251. The Commonwealth argues that Rivera's testimony attacked the thoroughness and fairness of its investigation into his case, raising a factual inconsistency, and thereby opened the door to "fair response." **See** Appellee's Brief, at 11-13.

The admission of evidence is within the sound discretion of the trial court and an appellate court will not reverse the trial court's determination absent an abuse of that discretion. **Commonwealth v. Puksar**, 740 A.2d 219, 225 (Pa. 1999). "Not merely an error in judgment, an abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record." **Commonwealth v. Montalvo**, 986 A.2d 84, 94 (Pa. 2009) (citing **Commonwealth v. Cooper**, 941 A.2d 655, 668 (Pa. 2007)) (internal citation and quotation marks omitted).

At trial, Rivera's counsel's cross-examination of Trooper Higdon proceeded as follows:

[By Defense Attorney:]

Q. And you still arrested my client[?]

A. Correct.

Q. So therefore you arrested my client based upon the forensic interview.

A. Well not solely, but correct.

**Q. Well you never talked to my client, did you?**

**A. No, I attempted to.**

N.T. Jury Trial, 8/7/19, at 100 (emphasis added). On re-direct examination, under the theory of "fair response," **see Copenhefer**, **supra**, the Commonwealth questioned Trooper Higdon as follows:

[By Commonwealth Attorney:]

Q. I'd like to direct your attention to June 26, 2018, at about 1400 hours, did you[,] along with other Pennsylvania State Police Troopers[,] go to the home of Jonathan Rivera?

A. Yes.

Q. And was he arrested based on the arrest warrant?

A. I had an arrest warrant in hand, correct.

Q. At approximately 1430 hours, did you read Mr. Rivera his **Miranda** warnings?

A. Yes.

Q. [W]hat are the **Miranda** warnings?

A. **Miranda** warnings are[—]I'll say in easy terms[—]their right to remain silent.

Q. Okay. After you read him his **Miranda** warnings, he never told you that he didn't do anything to any of these kids?

**A. No.**

**Q. He never denied doing anything to—**

- 11 -

[Defense Attorney]: Objection to that. A person doesn't have to deny.

The Court: You're correct, I think he's just asking if he did. You may answer.

**A. He did not deny.**

**Q. He never said ["]I didn't do this["]?**

**A. No.**

**Q. What did he say?**

**A. Nothing, he said he wished to not talk.**

*Id.* at 101-02 (emphasis added).

Here, we agree with Rivera that the court admitted Trooper Higdon's rebuttal testimony on re-direct examination in error, as it did not qualify as a "fair response." The defense's questioning of Trooper Higdon, when read within the context of the record, inquired into Rivera's pre-arrest questioning by police. *See* N.T. Jury Trial, 8/7/19, at 95-99 (defense attorney inquiring into bases for Trooper Higdon's belief that Rivera was perpetrator prior to his arresting Rivera). As such, Rivera did not create a factual inconsistency with regard to whether he denied the allegations against him "**at the time of** [**his**] **arrest**." *Turner*, *supra* (emphasis added); *see also Copenhefer*, *supra* at 252 (defendant clearly stated he cooperated with police because he had nothing to hide and insinuated that he answered "everything" police believed relevant during his questioning, when in fact, defendant had selectively invoked right to remain silent when police inquired regarding most incriminating questions). Nevertheless, we hold that the trial court's error was harmless.

Our Supreme Court has long held that:

> although a perfectly conducted trial is indeed the ideal objective of our judicial process, the defendant is not necessarily entitled to relief simply because of some imperfections in the trial, so long as he has been accorded a fair trial. A defendant is entitled to a fair trial but not a perfect one. If a trial error does not deprive the defendant of the fundamentals of a fair trial, his conviction will not be reversed.

*Commonwealth v. Noel*, 104 A.3d 1156, 1169 (Pa. 2014) (quoting

*Commonwealth v. Wright*, 961 A.2d 119, 135 (Pa. 2008)) (brackets and

quotation marks omitted). Where a trial court has erroneously admitted

evidence of post-arrest silence, we may find that no new trial is warranted if

we are convinced the error was harmless beyond a reasonable doubt. *See*

*Commonwealth v. Adams*, 39 A.3d 310, 321-22 (Pa. Super. 2012). The

Commonwealth carries the burden of proving harmless error. *Id.* at 322. Our

Supreme Court has clarified that harmless error exists where

> the record demonstrates either: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Hairston*, 84 A.3d 657, 671-72 (Pa. 2014).

Here, we find that the properly admitted and uncontradicted evidence

of Rivera's guilt was so overwhelming by comparison to any prejudice caused

by the error that it could not have contributed to the verdicts in any of Rivera's convictions.[24]  **See Hairston**, **supra**.

With respect to victims G.R. and C.P., the Commonwealth's evidence of corruption of minors—course of conduct, indecent exposure, and EWOC,[25] included extensive direct victim testimony,[26] testimony from a responding

---

[24] As we note below, **see infra** at 23-32, we reverse Rivera's convictions under Counts 21, and 22, on other grounds, and remand for resentencing on Count 15, only.

[25] We find the evidence was sufficient to prove Rivera's EWOC conviction, beyond a reasonable doubt, as a first-degree misdemeanor, rather than a third-degree felony.  **See infra** at 29-32.

[26] **See** N.T. Jury Trial, 8/6/19, at 60 ("[Rivera] put his private in our butt."); **id.** at 61 ("[Rivera] doesn't really explain it because um, cause we already know the games but all he does is takes off his clothes and tells us that dares and stuff, and Simon says."); **id.** at 62 (Q:  "Does [Rivera] take off his underwear?"  A:  "Yes."); **id.** ("[Rivera] does like, um he, he, um, puts his private in our butts and then starts telling us to do weird stuff, stuff with truth or dare, or um Simon says."); **id.** at 63 (Q:  "What does [Rivera] do to [C.P.]?"  A:  "The same thing he does to me."  Q:  "Which is what?"  A:  "He does, um, he puts his private in [C.P.'s] butt and like, [C.P.] has to do stuff with it."  Q: "So what does [C.P.] have to do with it?"  A:  "Touch it and stuff.  . . . [with] her hands.";  Q:  "And you said it feels like a dog toy?"  A:  "Yea."); **id.** at 64 (Q:  "You do remember [Rivera] saying don't tell anybody?"  A:  "Yea."); **id.** at 65-66 ("[Rivera] stopped the car because there was no cars coming through and then he told us to sit on his private[.]"); **id.** at 66 (Q:  "[Rivera] told you that if anybody asks[,] just tell them that we stopped for gas?"  A:  "Yea."  Q: "And you thought that was silly because [Rivera] already stopped for gas[?]" A:  "Yea."); **id.** at 67 ("[Rivera] showed us videos of other people doing the same thing.  . . .  That um, not really the same thing but, um adults touching their other, the other person[']s private and stuff."); **id.** at 68 ("[Rivera] went in the barn like real, really down from the barn and then, um then he was squirting it in this like, like, hay thing.  . . .  In this hay box and then he told us[, ']you want to try some?[']  And then we, we said [']N]o![']  And we ran back really fast.  . . .  Um, he, he was shaking his private and then like

- 14 -

paramedic, **_see_** N.T. Jury Trial, 8/6/19, at 110-18, the testimony of a

Children's House Child Advocacy Center forensic interviewer, **_id._** at 28-49, as

---

squirting white stuff out of his privates."); **_id._** at 73-74 ("I was in the bus with [C.P.] and [she] told me like 'This has to stop,' and stuff, and I told her [']I know but how do we do that?[']  And we didn't want to tell our moms because um, then we thought that we were going to get in trouble.  So we didn't know what to do so we just did nothing because we didn't know what to do."); **_id._** at 200 ("And [Rivera will] wake us up.  . . .  And then we'll watch half of the movie.  . . .  [Then, h]e touched my private . . . [with h]is private[.]"); **_id._** at 201 (Q:  "[D]id [Rivera] ever take off his underwear too?"  A:  "Yes."); **_id._** at 203-04 (Q:  "[S]o did you see [Rivera's] private touch [G.R.]'s private?"  A: "Yes."  . . .  Q:  "What did [Rivera] tell [G.R.] to do?"  A:  "[T]o pull her pants down."); **_id._** at 205-06 (Q:  "Did anything ever happen with you, [G.R.] and [Rivera] in a barn?"  A:  "Yes.  . . .  [Rivera] was showing us a video.  . . .  I, I don't look at those videos.  . . .  Cause I don't like it.  . . .  I just don't like watching like, videos on his phone.  . . .  Because, because um, [Rivera]'s showing us on the phone what, what um [G.R.] and him do, just with different [grownups]."); **_id._** at 70, 73, 78 ("[Rivera] got um, a lollipop um, from, he got a lollipop for us for school.  And then he opened one and started choking us with it.  And then um, he dropped a lollipop in my mouth and I had to go in the hospital.  . . .  [It was at n]ighttime because we were going to sleep.  . . . [Rivera was tucking us to bed and then so I wasn't asleep.  . . .  He was choking both of us."; "I don't, I don't think I liked it."; "[C.P. was also choking], because we, so [Rivera] was like choking both of us with the lollipop and then, then he accident[tal]ly dropped it into my throat and then he tried to take it out.  . . .  [C.P.] didn't get to go to the hospital like, she, she chokes and then he takes the lollipop out.  And then he starts choking me with it.  . . . I just saw [Rivera's] hand up and then it, my eyes just closed."); **_id._** at 207-08, 209 ("I woke up, and well I woke up and [Rivera] was holding two lollipops. One for me and one for [G.R.].  And he, he told us to open our mouth.  So we did and then, and then he put the lollipop in [G.R.'s] mouth."; Q: "Did [Rivera] ever, did he take it out?"  A:  "He couldn't.  I started stomping on the floor [to wake up my mom] and my mom woke up."; "[A]n ambulance came cause [my mom] called and then a helicopter came to get here quicker to [take G.R. to] the hospital[.]").

well as audio recordings of the victims,[27] and the video recordings of G.R.'s

and C.P.'s forensic interviews. *Id.* at 122-23, N.T. Jury Trial, 8/7/19, at 2.

Regarding victim S.C., the Commonwealth's evidence of corruption of

minors—course of conduct—included direct victim testimony,[28] Children's

_____

[27] *See* N.T. Jury Trial, 8/6/19, at 182-93 (G.R.: "[C.P.] said that she doesn't want to do it again. . . . I said I don't want to do it again. . . . I keep playing the game [Rivera] would like keep waking us up to do it. . . . And we said it [] in secret in the bus. Cause we don't want nobody to know this, that we [] touched, we touched and stuff. . . . No we want to do stuff [with Rivera] but not do the private stuff. We can play games but not like, bad games. . . . Like, like he does Simon Says and like [] he does like, Truth or Dare[.]"; C.P.: "[Rivera] made us touch his pee pee. . . . [H]e told us not to tell anybody." F.M.: "Did [Rivera] ever put his pee pee inside you?" C.P.: "In that private—" F.M.: "In your butt? Did he put it inside?" C.P.: "Yea, but I didn't want him to . . . and [G.R.] too. . . . He did it and I didn't want him to. . . . I told him not to. I just told him [] I just want to watch."; F.M.: "Wa[s Rivera] playin[g] wit[h] you guys with the lollipop?" C.P.: "Yea, my I told him I didn't want to. . . . [G.R. choked] so I got so scared that I was stomping so I hoped mommy'd come up.").

[28] *See* N.T. Jury Trial, 8/7/19, at 19, 26, 30 ("[W]e were in like a shed because we had a shed next to the house and—where we keep our stuff in there and it was like this hammer thing, it wasn't really a hammer but it was some type of tool and was like playing with it, like banging like a—a (unintelligible) on it and I was playing around with it and when I bent over he tried to touch me."; Q: "Um, so did you actually feel his hand on your butt or?" A: "Yeah, like— like the tip of his finger, like was about to and that's when my mom started coming outside."; "I didn't see it because like I felt the tip of his hand."); *id.* at 20-23 ("[Rivera] had pulled down his clothes, his underwear and his pants, and I slept with this doll, like this little, little doll from a movie that I was watching and I had—I had a doll from the movie. . . . And I would sleep with that doll and I remember one night when [Rivera] came into my room, he had pulled down his clothes and had took the doll and placed it right there on his private areas. . . . like thirty second[s] later, my Mom was coming up—up to the room and then that's when he threw the doll on my bed, pulled his pants up and left to the bathroom.").

House Child Advocacy Center forensic interviewer testimony, *see* N.T. Jury Trial, 8/6/19, at 28-49, and the video recording of S.C.'s forensic interview. *See* N.T. Jury Trial, 8/7/19, at 42.

Finally, regarding victim S.M., the Commonwealth's evidence of corruption of minors—course of conduct—and criminal attempt to commit indecent assault—person less than 13 years of age—included direct victim testimony,[29] as well as the video recording of S.M.'s forensic interview. *See* N.T. Jury Trial, 8/7/19, at 65-67.

_____

[29] *See* N.T. Jury Trial, 8/7/19, at 47 ("[Rivera] would sit by me on the couch while we were watching [television] or while I was reading a book and he would touch me above my pants in my lower region. . . . [Rivera] would sit by me and talk to me, trying to be my friend and then he would put his hand on my lower back and slowly move down."; Q: "[A]bout how many times did [Rivera] ever sit next to you on the couch and—rub your lower back?" A: "Four to nine."); *id.* at 48, 49-50 (Q: "When [Rivera] started to move his hand down your back, did he [] get to your waistline where your pants were?" A: "Yes." Q: "Okay. Were there times when [Rivera] put his hand down inside of your pants?" A: "There was once."; Q: "Can you tell me everything you remember about that [one] time?" A: "I sat next to him and I was reading a book and he asked me what book I was reading and I told him the name of it, it was a—it was probably a Dr. Seuss book. And he then proceeded to put his hand on my back and move down, but this time instead of going above, he went inside my pants and then he, from under the—from the pants he would go under through my underwear like in the bottom, I don't know how to explain it, I said I don't like that and I moved away and he said this— ['K]eep this between us.[']"); *id.* at 48 (Q: "[Of] the times where [Rivera] moved his hands down to your waistline and kept his hand above your pants[,] what would he do with his hands after he got to your waistline?" A: "He would rub. . . . He would rub on where my butt is and then he would like try to go more under. . . . Like where my vagina would be."); *id.* at 49 (Q: "About how long would these incidents last?" A: "Only ten minutes because everyone was in the kitchen and [Rivera] would try to make sure it would happen while they weren't around, but someone would come out and he would

We find, beyond a reasonable doubt, that the properly admitted evidence of Rivera's guilt was so overwhelming, and the prejudicial effect of the court's error in admitting such minimal evidence of Rivera's post-arrest silence so insignificant by comparison, that the error could not have contributed to the verdict. **See Hairston**, **supra**; **see also Adams**, **supra**. Indeed, the Commonwealth did not mention Rivera's post-**Miranda** silence again or reference it during closing argument. **See Commonwealth v. Moury**, 992 A.2d 162, 178 (Pa. Super. 2010) (properly admitted evidence of defendant's guilt was so overwhelming that single reference to his silence at trial constituted harmless error); **cf. Commonwealth v. DiPietro**, 648 A.2d 777, 781 (Pa. 1994) (prosecutor's use of post-arrest silence during closing argument compounds prejudice). Accordingly, the trial court's error did not deprive Rivera of the fundamentals of a fair trial.[30]  **See Noel**, **supra**; **cf.**

_____

stop."); **id.** at 52 ("My grandma and I shared a room, but she was working that night so I was sleeping alone, and [Rivera] came in, but I was asleep during the time he came in and I woke up and he was on the floor on all fours and he said that he dropped something under my door.  And then [Rivera] got up and sat on the edge of my bed and started—and he pulled my shirt up and he started rubbing my stomach and told me to go back to sleep."; Q: "At that time[,] did he touch any of your private parts or anything like that?"  A: "No, he just touched my chest.").

[30] We note that "[i]f the Commonwealth mentions a defendant's post-arrest silence, the court might still be able to cure any prejudice through prompt and adequate curative instructions." **Commonwealth v. Moury**, 992 A.2d 162, 176 (Pa. Super. 2010).  Here, following the Commonwealth's rebuttal evidence and Rivera's objection, the court stated, "Okay and just to [Rivera's trial counsel's] point, that is [Rivera's] right as a defendant, okay, [c]onstitutional [r]ight."  N.T. Jury Trial, 8/7/19, at 102.  We find this

***Turner***, ***supra*** at 540 (finding harmless error inapplicable because "beyond a reasonable doubt" standard was not met where attempts to draw conclusions regarding jury verdict would lead to speculation by appellate court since jury returned not guilty verdict on murder charge but returned guilty verdict on voluntary manslaughter charge, evidencing possible compromise verdict). ***See also Commonwealth v. Wright***, 961 A.2d 119, 143-44 (Pa. 2008) (in light of overwhelming evidence implicating defendant in crime, prosecution's remarks about defendant's silence constituted harmless error); ***cf. Commonwealth v. Costa***, 742 A.2d 1076, 1078 (Pa. 1999) (declining to find harmless error beyond reasonable doubt where prosecution referenced defendant's silence at trial, and no overwhelming evidence of guilt existed).

Next, Rivera claims that the trial court erred when it permitted the Commonwealth to amend the information after the close of its case-in-chief and after the start of the defense at trial. Specifically, Rivera argues that the

---

statement by the court—lacking in specifics with regard to *which* of Rivera's constitutional rights was at issue and *how* the jury should consider that right within the context of the relevant testimony—was inadequate to qualify as curative. ***See Moury***, ***supra*** ("To evaluate whether cautionary instructions can cure a reference to a defendant's post-arrest silence[,] courts must consider[:] 1) the nature of the reference to the defendant's silence; 2) how it was elicited; 3) whether the district attorney exploited it; and 4) the promptness and **adequacy of the cautionary instructions**.") (internal quotation marks omitted; emphasis added).

Commonwealth's amendments to Counts 21 and 22 upgraded those charges from misdemeanors in the first degree[31] to felonies of the third degree.[32]

The court permitted the Commonwealth to amend Counts 21 and 22 because the Commonwealth alleged the amendment simply changed the grading pursuant to subsection 3126(b)(3)(iii). **See** N.T. Jury Trial, 8/8/19, at 6 (Commonwealth Attorney: "There's a subsection under indecent assault that says it's a felony of the third degree if the indecent contact has to do with

_____

[31] Initially, the Commonwealth's information charged Rivera, at those counts, with indecent assault pursuant to subsection 3126(a)(7), which states:

> **(a)** *Offense defined.* **—** A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:
>
> &ast; &ast; &ast;
>
> **(7)** the complainant is less than 13 years of age[.]

18 Pa.C.S.A. § 3126(a)(7). Under subsection (b), those crimes were graded as misdemeanors of the first degree. **See** 18 Pa.C.S.A. § 3126(b)(3) ("An offense under subsection (a)(7) is a misdemeanor of the first degree unless any of the following apply, in which case it is a felony of the third degree: [i]t is a second or subsequent offense[; t]here has been a course of conduct of indecent assault by the person[; **t]he indecent assault was committed by touching the complainant's sexual or intimate parts with sexual or intimate parts of the person**[; or, t]he indecent assault is committed by touching the person's sexual or intimate parts with the complainant's sexual or intimate parts.") (emphasis added); **see also** N.T. Jury Trial, 8/8/19, at 6 ("[Counts 21and 22 are both] graded as a misdemeanor of the first degree.").

[32] Subsection 3126(b)(3)(iii) states that an indecent assault is graded as a felony of the third degree when it "was committed by touching the complainant's sexual or intimate parts with sexual or intimate parts of the person." 18 Pa.C.S.A. § 3126(b)(3)(iii). **See also supra** at n.31.

. . . the private parts of the suspect and the private part of the victim touch[ing]. So I'm going to suggest that—I understand that it's late in the game to be upgrading two counts from misdemeanor 1's to felony 3's[—]but I'm going to suggest that they're lesser included offenses of the [] rape [and] IDSI charges.") (unnecessary capitalization omitted); *id.* at 9 (The Court: "Okay, that's fine. I'm going to allow [the amendments to Counts 21 and 22], with the understanding I'm not adding a new offense[.] I am going to add some language to [those counts t]hat will make reference to the sexual or intimate parts that is mentioned in [subsection] (b)(3)(iii)[. This amendment] adds an additional element to the offense, but that element is included in other offenses that have previously been charged[,] so it's really not adding anything new.").

Rivera asserts that he was unfairly prejudiced by the Commonwealth's last-minute amendment because it alleged, for the first time, that Rivera brought "his intimate parts into contact with the intimate parts of another for the purpose of arousing or gratifying sexual desire[.]" Appellant's Brief, at 47. Additionally, Rivera argues that his trial strategy was adversely affected insofar as his previous strategy permitted Rivera to avoid all felony charges by pointing to a lack of physical evidence and denying any penetration occurred, whereas, post-amendment, Rivera's defense—if believed by the jury—would no longer permit avoidance of all felony convictions since lack of physical evidence, and lack of penetration, was no defense. *See id.* at 51.

Rivera concludes that he suffered irreparable prejudice and, therefore, he is entitled to a new trial. We agree.

Pennsylvania Rule of Criminal Procedure 564 governs when the Commonwealth may amend the charges against a defendant, and states:

> The court may allow an information to be amended, provided that the information[,] as amended[,] does not charge offenses arising from a different set of events and that the amended charges are not so materially different from the original charge that the defendant would be unfairly prejudiced. Upon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

Pa.R.Crim.P. 564.

Our standard of review for a challenge to the court's grant of an amendment to the information is well-settled:

> [We consider] whether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted.

*Commonwealth v. Davalos*, 779 A.2d 1190, 1194 (Pa. Super. 2001) (quoting *Commonwealth v. Stanley*, 401 A.2d 1166, 1175 (Pa. Super. 1979)); *see also Commonwealth v. Jackson*, 215 A.3d 972, 979 (Pa. Super. 2019).

> Since the purpose of the information is to apprise the defendant of the charges against him so that he may have a fair opportunity

to prepare a defense, our Supreme Court has stated that following an amendment, **relief is warranted only when the variance between the original and the new charges prejudices an appellant by, for example, rendering defenses which might have been raised against the original charges ineffective with respect to the substituted charges**.

*Commonwealth v. Sinclair*, 897 A.2d 1218, 1223 (Pa. Super. 2006) (citing

*Commonwealth v. Brown*, 727 A.2d 541, 543 (Pa. 1999)) (emphasis

added).  We consider the following factors to determine whether the defendant

suffered prejudice:

> (1) whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.

*Sinclair*, *supra* (citing *Commonwealth v. Grekis*, 601 A.2d 1284, 1292 (Pa.

Super. 1992)).

Here, under the first *Sinclair* factor, the Commonwealth argues that the

factual scenario supporting the charges remained the same before and after

the amendment because the additional element—that Rivera's indecent

assault be "committed by touching the complainant's sexual or intimate parts

with [Rivera's] sexual or intimate parts," 18 Pa.C.S.A. § 3126(b)(3)(iii)—was

previously alleged through the rape and IDSI charges.[33]  **See** Appellee's Brief,

---

[33] Counts 2-9 alleged Rivera committed the crimes of rape and IDSI against both G.R. and C.P.

- 23 -

at 16-17. As such, the Commonwealth would have us find that Rivera was already on notice that he was accused of touching his intimate parts to the intimate parts of his victims. We disagree.

In Rivera's case, the factual scenario supporting the charges under Counts 21 and 22 materially changed following the Commonwealth's amendment. *See Sinclair*, *supra*. G.R. alleged separate acts constituting rape and indecent assault. *See* N.T. Jury Trial, 8/6/19, at 61, 62-63. G.R. claimed that Rivera anally penetrated both her and C.P., and separately, claimed she and C.P. each touched Rivera's genitals. *Id.* Nevertheless, the Commonwealth's amendment required the logical inference that elements from the rape or IDSI charges could be cobbled together, or merged, with those of indecent assault. They cannot under these circumstances, where the factual scenario underlying each charge is separate and distinct. *See e.g. Commonwealth v. Richter*, 676 A.2d 1232, 1236 (Pa. Super. 1996) ("[W]hen an indecent assault conviction is predicated upon an act separate from the act of forcible intercourse, the indecent assault conviction does not merge with a conviction for rape. This is true whether the act [that] constitutes indecent assault is committed immediately prior to, or concurrently with[,] the rape."); *cf. Commonwealth v. Lomax*, 8 A.3d 1264, 1268 (Pa. Super. 2010) (rape of child merged with first-degree misdemeanor indecent assault where crime of rape, alleging touching of defendant's and victim's genitals together, added no elements to indecent assault charge, which Commonwealth based on defendant's touching of victim's sexual parts).

Under the second *Sinclair* factor, Rivera claims that the amendment added new facts previously unknown to him insofar as the Commonwealth alleged, for the first time, that Rivera brought his intimate parts into contact with G.R.'s and C.P.'s intimate parts for the purpose of arousing or gratifying sexual desire. *See* Appellant's Brief, at 47, 49 n.14. We agree.

The Commonwealth's reliance on the facts underlying the rape and IDSI charges is misplaced, since indecent assault contains an intent element that the prosecution need not prove to sustain a rape or IDSI conviction. *See* 18 Pa.C.S.A. § 3126(a) (elements of offense includes that indecent contact was "**for the purpose of arousing sexual desire in the person or the complainant**.") (emphasis added);[34] *see also* 18 Pa.C.S.A. § 3121(c) ("A person commits the offense of rape of a child, a felony of the first degree, when the person engages in sexual intercourse with a complainant who is less than 13 years of age.");[35] 18 Pa.C.S.A. § 3123(b) ("A person commits involuntary deviate sexual intercourse with a child, a felony of the first degree,

_____

[34] Indecent contact is defined as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S.A. § 3101.

[35] In addition to its ordinary meaning, "sexual intercourse" includes intercourse per os or per anus, with some penetration however slight; emission is not required. *See* 18 Pa.C.S.A. § 3101.

when the person engages in deviate sexual intercourse with a complainant who is less than 13 years of age.").[36]

Here, the Commonwealth's information did not charge Rivera with bringing his intimate parts into contact with G.R.'s and C.P.'s intimate parts **for the purpose of arousing or gratifying sexual desire** until after the court permitted the amendment to Counts 21 and 22. **See** 18 Pa.C.S.A. § 3126(b)(3)(iii) (indecent assault is third-degree felony when "committed by touching the complainant's sexual or intimate parts with [the defendant's] sexual or intimate parts"). As such, the Commonwealth's amendment resulted in the inclusion of a new fact previously unknown to Rivera. **See Sinclair**, **supra**.

Under the third **Sinclair** factor, we note that, had Rivera raised a challenge to the sufficiency of the evidence proffered at his preliminary hearing in a pre-trial writ of habeas corpus, he would have been entitled to relief in the form of a new preliminary hearing. **See McClelland**, **supra**.

With regard to the fourth **Sinclair** factor, the description of the charges materially changed, as described above in the analysis of the first and second **Sinclair** factors.

---

[36] Deviate sexual intercourse is defined as "[s]exual intercourse[,] per os or per anus[,] between human beings and any form of sexual intercourse with an animal. The term also includes penetration, however slight, of the genitals or anus of another person with a foreign object for any purpose other than good faith medical, hygienic[,] or law enforcement procedures." 18 Pa.C.S.A. § 3101. "A foreign object is any physical object not a part of the actor's body[.]" **Commonwealth v. Kelley**, 801 A.2d 551, 555 n.4 (Pa. 2002) (citation and quotation marks omitted).

Under the fifth *Sinclair* factor, Rivera's professed trial strategy was adversely affected. *See* Appellant's Brief, at 51. Prior to the Commonwealth's amendment, Rivera could avoid all of his felony charges—Counts 1-19—by denying that any penetration occurred and relying on the lack of evidence. *See* 18 Pa.C.S.A. §§ 2702(a)(1), 3121(c), 3123(b), 3125(a)(7), 4304(a)(1), and 6301(a)(ii). Conversely, post-amendment, Rivera's defense that no penetration occurred and that there was a general lack of physical evidence—if believed by the jury—would no longer permit avoidance of all felony convictions, since lack of penetration was no defense. *See* 18 Pa.C.S.A. § 3126(b)(3)(iii) (indecent assault is third-degree felony when it "was committed by touching the complainant's sexual or intimate parts with [the defendant's] sexual or intimate parts").

Finally, under the sixth *Sinclair* factor, the Commonwealth's amendment request denied Rivera fair notice as well as the time necessary to adequately prepare a defense. Indeed, the court permitted the Commonwealth's amendment **after** the defense had already begun placing evidence into the record. *See* N.T. Jury Trial, 8/8/19, at 9.

In sum, all six of the *Sinclair* factors weigh in favor of finding that Rivera suffered prejudice. *See Sinclair*, *supra* at 1223. We conclude, therefore, that Rivera was unfairly prejudiced. Consequently, the court should not have permitted the Commonwealth to amend Counts 21 and 22, *see Davalos*, *supra*, and Rivera is, thus, entitled to have those convictions vacated. If, upon remand, the Commonwealth wishes to refile those two charges, Rivera

is entitled to a new trial on those two counts. *See Commonwealth v. Bricker*, 882 A.2d 1008, 1022 (Pa. Super. 2005) (where trial court abuses its discretion in permitting Commonwealth to amend charges, appellate court may vacate convictions and order new trial as to those erroneously-amended charges). Moreover, because the court sentenced Rivera to consecutive 1-7 years' terms of incarceration on Count 21 and Count 22, our vacation of Rivera's convictions upsets the court's sentencing scheme. Thus, Rivera must be resentenced on the remaining convictions we have affirmed. *See Commonwealth v. Lekka*, 210 A.3d 343, 358-59 (Pa. Super. 2019) (quoting *Commonwealth v. Benchoff*, 700 A.2d 1289, 1294 (Pa. Super. 1997)) ("[I]f we determine that a correction by this [C]ourt may upset the sentencing scheme envisioned by the [sentencing] court, the better practice is to remand.").

Additionally, our review of the record requires that we remand for resentencing on Count 15—EWOC. Although graded as a third-degree felony, the Commonwealth's information did not specifically allege, and the court did not specifically instruct the jury regarding, either a "course of conduct," *see* 18 Pa.C.S.A. § 4304(b)(1)(ii), or a "substantial risk of death or serious bodily injury," *see id.* at (b)(1)(iii), to the victim, G.R., with regard to the Count 15

EWOC charge.[37]  *See* N.T. Jury Trial, 8/8/19, at 180-81.[38]  Nevertheless, the

jury convicted Rivera of EWOC as a third-degree felony, rather than a first-

_____

[37] The Commonwealth's bill of information charged Rivera at Count 15 with:

> COUNT 15—Endangering Welfare of Children—(**FELONY 3**)—
> [Rivera], on or about, **between 02/21/18 and 02/22/18**, in
> the County of Bradford, being a parent, guardian or other person
> supervising the welfare of [G.R.] a child under 18 years of age,
> knowingly endangered the welfare of said child by violating a duty
> of care, protection or support, namely, intentionally **shoved a
> lollipop in and out of the victim's mouth for sexual
> gratification, getting it stuck in her throat causing cardiac
> arrest**, in violation of Section § 4304(a)(1) of the Pennsylvania
> Crimes Code, Act of December 6, 1972, as amended, 18
> Pa.C.S.[A.] §4304(a)(1)[.]

Commonwealth's Information, at 3 (emphasis added).

[38] With respect to the EWOC charge, the court instructed the jury as follows:

> The defendant has been charged with endangering the welfare of
> a child.  To find the defendant guilty of this offense, you must find
> that each of the following elements have been prove[n] beyond a
> reasonable doubt:  [f]irst, that the defendant endangered the
> welfare of the child by violating a duty of care, protection, or
> support[;  s]econd, that the defendant endangered the welfare of
> the child knowingly[—a person's conduct is ["]knowing["] when
> he or she is aware that it is practically certain that his or her
> conduct will cause a particular result[; t]hird, that the defendant
> was[,] at the time[,] a parent, guardian, person supervising the
> welfare of the child under the age of 18, or a person that employs
> or supervises such a person[—t]he term ["]person supervising the
> welfare of a child["] means a person other than a parent or
> guardian that provides care, education, training or control of a
> child[; f]ourth, that the child was under the age of 18 years at the
> time of the endangering.  If, after considering all the evidence,
> you find that the Commonwealth has established beyond a
> reasonable doubt all of the elements of this crime, you must find

degree misdemeanor. ***See*** 18 Pa.C.S.A. §§ 4304(b)(1)(i), (ii), (iii) ("An offense under this section constitutes a misdemeanor of the first degree. [] If the actor engaged in a course of conduct of endangering the welfare of a child, the offense constitutes a felony of the third degree. [] If, in the commission of the offense under subsection (a)(1), the actor created a substantial risk of death or serious bodily injury, the offense constitutes a felony of the third degree.").

Moreover, the court sentenced Rivera to 18 months' to 7 years' incarceration on Count 15—the statutory maximum for a third-degree felony. ***See*** 18 Pa.C.S.A. § 1103(3) ("In the case of [a person who has been convicted of] a felony of the third degree, [the person may be sentenced] for a term which shall be fixed by the court at not more than seven years."); ***cf. id.*** at § 1104(1) ("A person who has been convicted of a [first-degree] misdemeanor may be sentenced to imprisonment for a definite term which shall be fixed by the court and shall be not more than [5] years[.]").

Because Rivera's Count 15 was improperly graded as a third-degree felony where the trial court failed to give a proper instruction on the offense, we remand to the trial court for imposition of a sentence consistent with the grading of this crime as a first-degree misdemeanor. ***See Commonwealth***

---

the defendant guilty. Otherwise, you must find the defendant not guilty.

N.T. Jury Trial, 8/8/19, at 180-81.

*v. Hoffman*, 198 A.3d 1112, 1123 (Pa. Super. 2018) ("[A] claim that the court improperly graded an offense for sentencing purposes implicates the legality of sentence. A challenge to the legality of sentence is never waived and **may be the subject of inquiry by the appellate court *sua sponte*.** Our standard of review is *de novo*, and the scope of our review is plenary.") (internal citations, quotation marks, and brackets omitted; emphasis added); *see also Commonwealth v. Popow*, 844 A.2d 13, 18 (Pa. Super. 2004) ("[I]n order to be graded as a third-degree felony, the Commonwealth must allege in the information and present evidence at trial of the additional factor of 'course of conduct,' **and the jury must be instructed on such**. . . . We cannot merely assume the jury found this additional fact when no evidence of it was presented at trial **and no mention of it was made in the jury's charge**.") (emphasis added).

Here, the court made no mention of either "course of conduct" or "substantial risk of death or serious bodily injury" during the jury charge.[39] *See* N.T. Jury Trial, 8/8/19, at 180-81; *see also Commonwealth v.*

---

[39] It is likely safe to assume the Commonwealth was proceeding on a theory of "substantial risk of death or serious bodily injury," *see* N.T. Jury Trial, 8/6/19, at 115 (Q: "Based on your training and experience, if CPR hadn't [] resulted in . . . the lollipop being dislodged from [G.R.'s] throat, **is there a significant chance she would have expired**?" A: "**Almost assuredly**.") (emphasis added), rather than a "course of conduct." Nevertheless, because the court instructed the jury on neither ground for increasing the grading of Rivera's EWOC charge, we cannot assume the jury found either element present here. *See Popow*, *supra* at 18 ("We cannot merely assume the jury found this additional fact when no evidence of it was presented at trial **and no mention of it was made in the jury's charge**.) (emphasis added).

*Hartman*, 638 A.2d 968, 971 (Pa. 1994) (when court instructs jury, objective is to explain to jury how to approach its task and factors it should consider in reaching verdict). Additionally, the jury verdict sheet failed to identify whether the jury made any determination with respect to those terms. *See* Jury Verdict Slip, 8/8/19, at 2. Because we may not assume that the jury found either one of these additional facts with respect to the EWOC charge, especially where they were not charged on those terms, *see Popow*, *supra*, sentencing Rivera on the offense as a third-degree felony was improper, and he is entitled to resentencing on Count 15. *Id.*

Convictions under Counts 21, and 22 vacated, all other convictions affirmed. Judgment of sentence vacated. Case remanded for resentencing in accordance with the dictates of this opinion. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/29/2021