J-S39041-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JEFFERY JOHN IRVINE | : | |
| | : | |
| Appellant | : | No. 498 MDA 2022 |

Appeal from the Judgment of Sentence Entered February 7, 2022
In the Court of Common Pleas of Union County Criminal Division at
No(s): CP-60-CR-0000150-2021

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JEFFERY JOHN IRVINE | : | |
| | : | |
| Appellant | : | No. 499 MDA 2022 |

Appeal from the Judgment of Sentence Entered February 7, 2022
In the Court of Common Pleas of Union County Criminal Division at
No(s): CP-60-CR-0000153-2021

BEFORE: PANELLA, P.J., BENDER, P.J.E., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED JANUARY 18, 2023**

Appellant Jeffery John Irvine appeals from the judgments of sentence imposed following his consolidated jury trial and convictions for rape and related offenses. Appellant contends that the trial court erred and violated his Sixth Amendment right to cross-examine and confront the victim by admitting the victim's hearsay statements when the victim did not testify. We affirm

the judgments of sentence in part, and vacate in part as to the sentence for aggravated indecent assault.

On June 2, 2021, Officer Nathan Fisher of the Mifflinburg Borough Police Department and Officer David Shaffer of the Middleburgh Police Department were at a gas station on Route 104 in Snyder County. The two officers saw a woman, later identified as Ashley Coen, in the front passenger seat of a car screaming for help and saying that she was being held against her will. Appellant, who was the driver, pulled the car out of the gas station onto Route 104. Both Officer Fisher and Officer Shaffer pursued Appellant's car into Union County in separate police vehicles.

During the pursuit, the officers activated their vehicles' emergency lights and sirens. Appellant did not stop, and instead accelerated to approximately 70 to 80 miles per hour. A pedestrian walking her dogs jumped out of the way of Appellant's car. Appellant eventually stopped his car. Ms. Coen immediately exited Appellant's vehicle and ran towards the police cars screaming for help. At that time, the officers arrested Appellant on the side of the road.

Both Officer Fisher and Officer Shaffer observed that Ms. Coen had bruises on her face and arms. The officers called for an ambulance and Ms. Coen was transported to Evangelical Community Hospital. Trooper Jessica Naschke of the Pennsylvania State Police interviewed Ms. Coen at the hospital. Trooper Naschke observed that Ms. Coen was scared, visibly upset, and that she had bruises on both of her eyes and on her arms.

Ms. Coen gave a statement to Trooper Naschke, indicating that she had moved to Mifflinburg, Union County about two months ago. Ms. Coen was living with Appellant, who was her boyfriend. Ms. Coen explained that the night before she screamed for help, she and Appellant had an argument, and she slept on the couch while Appellant slept in the bedroom. On the morning of June 2, Appellant threw food at Ms. Coen and yelled at her that they were out of cigarettes. Ms. Coen began arguing with Appellant, who then choked her, dragged her to the bedroom, and punched her in the face with a closed fist several times. Appellant then pulled off Ms. Coen's pants and underwear and inserted his penis in her vagina. Ms. Coen stated that, later that day, she convinced Appellant to go out and told him that she would buy cigarettes. Once they were in the parking lot of the gas station, she signaled to the police officers there that she needed help.

Hannah McDowell is a registered nurse at Evangelical Community Hospital and has been trained as a sexual assault nurse examiner (SANE). Nurse McDowell performed a SANE examination of Ms. Coen on June 2, 2021. As part of her examination, she took a narrative statement from Ms. Coen, which she included verbatim in her report.

Appellant was charged with rape by forcible compulsion, aggravated indecent assault by forcible compulsion, strangulation, indecent assault by

forcible compulsion, simple assault, and false imprisonment[1] at Docket No. 150-2021. The Commonwealth also charged Appellant with one count of fleeing or attempting to elude a police officer (fleeing from police), four counts of recklessly endangering another person (REAP), and two summary violations of the Motor Vehicle Code[2] at Docket No. 153-2021.

On September 23, 2021 and October 6, 2021, the Commonwealth filed motions pursuant to 42 Pa.C.S. § 5964, requesting that the trial court issue a certificate under the seal of the court recommending that the courts in two counties in the State of New York where Ms. Coen was believed to reside take Ms. Coen into custody to compel her attendance at trial. The trial court granted both motions and issued the requested certificates.

On October 22, 2021, the Commonwealth filed a motion *in limine*. Therein, the Commonwealth argued that Appellant made several phone calls to Ms. Coen in which he had encouraged her not to cooperate with the Commonwealth. Therefore, the Commonwealth requested that Ms. Coen's statements to Nurse McDowell be admitted at trial under Pa.R.E. 804(b)(6), or in the alternative under Pa.R.E. 803(4). The Commonwealth also requested that Ms. Coen's statements to Trooper Naschke be admitted under Rule 804(b)(6).

---

[1] 18 Pa.C.S. §§ 3121(a)(1); 3125(a)(2); 2718(a)(1); 3126(a)(2); 2701(a)(1); and 2903(a), respectively.

[2] 75 Pa.C.S. § 3733(a); 18 Pa.C.S. § 2705; 75 Pa.C.S. §§ 3323(b); and 4524(e)(1), respectively.

- 4 -

The Honorable Michael T. Hudock held a hearing on the Commonwealth's motion *in limine* on October 25, 2021. At the hearing, Trooper Naschke testified that she had reviewed recordings of the calls that Appellant had made from to jail to Ms. Coen. The Commonwealth submitted a CD with the recording of Appellant's phone calls along with a transcript of the calls, which were admitted without objection. The Commonwealth argued that in his calls to Ms. Coen, Appellant sought to prevent Ms. Coen from attending the upcoming trial. Therefore, the Commonwealth asserted that it was necessary to introduce Ms. Coen's statements to Nurse McDowell and Trooper Naschke as evidence at trial.

In response, Appellant argued that if Ms. Coen did not testify at trial, then the admission of her statements would violate his right to confront his accuser under the Sixth Amendment to the United States Constitution. President Judge Hudock verbally granted the Commonwealth's motion to admit Ms. Coen's statements, but he did not place any findings of fact on the record.[3] *See* N.T. Mot. Hr'g, 10/25/21, at 21-22.

President Judge Hudock also presided over Appellant's jury trial on October 26, 2021. During the trial, Appellant again objected to the admission of a hearsay statement made by Ms. Coen. *See* N.T. Trial, 8/26/21, at 17.

---

[3] President Judge Hudock later reduced his verbal order to writing, which was dated October 25, 2021, filed on October 26, 2021, and served on the parties on November 1, 2021. *See* Trial Ct. Order, Docket Nos. 150-2021, 153-2021, 11/1/21. The written order does not contain any findings of fact.

The trial court overruled that objection and noted that Appellant had a standing objection to the admission of any of Ms. Coen's hearsay statements. *See id.* During the trial, both Trooper Naschke and Nurse McDowell testified regarding Ms. Coen's statements about Appellant's actions. *See id.* at 47-56, 63-65. Nurse McDowell also testified that Ms. Coen's injuries were consistent with being hit in the face, being choked, and dragged across a floor. *See id.* at 67-70. Ms. Coen did not testify at trial.[4]

That same day, the jury convicted Appellant of all counts at Docket No. 150-2021 and the felony and misdemeanor counts at Docket No. 153-2021. President Judge Hudock found Appellant not guilty of the two summary violations of the Motor Vehicle Code charged at Docket No. 153-2021.

Following President Judge Hudock's retirement, the Honorable Michael H. Sholley presided over Appellant's sentencing hearing on February 7, 2022. At sentencing, Appellant argued that his convictions for aggravated indecent assault and indecent assault should merge with his rape conviction. N.T. Sentencing Hr'g, 2/7/22, at 5. Appellant also argued that his simple assault conviction should merge with his strangulation conviction. *Id.* The Commonwealth concurred with Appellant that the aggravated indecent assault and indecent assault convictions should merge with the rape conviction, but

_____

[4] We note that although the Commonwealth admitted the recordings and transcripts of Appellant's prison calls at the pre-trial motions hearing, that evidence was not admitted at trial.

argued that simple assault did not merge with strangulation because those offenses involved different elements. *Id.* at 6.

The trial court did not merge any of Appellant's convictions and imposed an aggregate sentence of eight-and-a-half to twenty-nine years' incarceration.[5] The trial court did not find that Appellant was a sexually violent predator (SVP). The trial court also ordered Appellant to register as a Tier III offender under the Sexual Offender Registration and Notification Act[6] (SORNA).

_____

[5] Specifically, at Docket No. 153-2021, for count one, fleeing from police, the trial court sentenced Appellant to one to five years' incarceration. The trial court sentenced Appellant to terms of six months to two years' incarceration for each count of REAP, which were concurrent to each other, and consecutive to count one. *See* Sentencing Order, Docket No. 153-2021, 2/7/22, at 1-2 (unpaginated).

At Docket No. 150-2021, for count one, rape, the trial court sentenced Appellant to seven to twenty years' incarceration. *See* Sentencing Order, Docket No. 150-2021, 2/7/22, at 1 (unpaginated). For count two, aggravated indecent assault, the trial court imposed a concurrent term of five to ten years' incarceration. *See* Am. Sentencing Order, Docket No. 150-2021, 2/28/22. For count three, strangulation, the trial court sentenced Appellant to a concurrent term of three-and-a-half to seven years' incarceration. *See* Sentencing Order, Docket No. 150-2021, 2/7/22, at 1 (unpaginated). For count four, indecent assault, the trial court sentenced Appellant to a concurrent term of fourteen months to five years' incarceration. *See id.* at 1-2 (unpaginated). For count five, simple assault, the trial court imposed a concurrent sentence of nine months to two years' incarceration. *See id.* at 2 (unpaginated). For count six, false imprisonment, the trial court sentenced Appellant to a concurrent term of six months to two years' incarceration. *See id.* The aggregate sentence for Docket No. 150-2021 ran consecutive to the aggregate sentence at Docket No. 153-2021. *See id.* at 1-2 (unpaginated); Am. Sentencing Order, Docket No. 150-2021, 2/28/22.

[6] 42 Pa.C.S. §§ 9799.10-9799.41.

Appellant filed a timely post-sentence motion arguing that his constitutional right to confrontation had been violated. The trial court denied Appellant's post-sentence motion on February 28, 2022.[7] Appellant filed timely notices of appeal and court-ordered Pa.R.A.P. 1925(b) statements at each docket number.[8] President Judge Sholley issued a Rule 1925(a) opinion indicating that former President Judge Hudock had retired and was unable to write an opinion addressing the issues Appellant was raising on appeal. *See* Trial Ct. Op., 5/11/22, at 1 n.1. President Judge Sholley concluded that because he did not preside over the pre-trial hearings or at trial, he was unable to provide any additional information regarding Appellant's claims. *See id.* at 2.

On appeal, Appellant raises the following issue:

Did error occur where an alleged victim did not testify, but hearsay evidence regarding her supposed comments was admitted at trial, over defense objection?

---

[7] That same day, the trial court entered an order amending Appellant's sentence for aggravated indecent assault. The original sentencing order imposed an illegal flat sentence of five years' incarceration for that count, concurrent to Appellant's sentence for rape. *See* Sentencing Order, Docket No. 150-2021, 2/7/22, at 1 (unpaginated). As noted above, the trial court amended the sentence for aggravated indecent assault to a term of five to ten years' incarceration, concurrent to Appellant's sentence for rape. *See* Am. Sentencing Order, Docket No. 150-2021, 2/28/22.

[8] On April 19, 2022, this Court consolidated the appeals *sua sponte* pursuant to Pa.R.A.P. 513. Order, 4/19/22.

Appellant's Brief at 8.[9]

**Admission of Victim's Statements**

Appellant argues that the trial court violated his right to confront his accuser under the Sixth Amendment to the United States Constitution and Article 1, Section 9 of the Pennsylvania Constitution[10] by admitting Ms. Coen's hearsay statements under Pa.R.E. 804(b)(6) when Ms. Coen did not testify at trial. *Id.* at 13-18. Appellant contends that the trial court erred in concluding that Appellant had wrongfully procured Ms. Coen's absence from the trial. *Id.* at 14-16. Appellant claims that the transcript of the phone calls between him

---

[9] We note that in his Rule 1925(b) statement, Appellant argued that the trial court erred by precluding Appellant from mentioning the victim's absence at trial. *See* Rule 1925(b) Statement, 4/18/22. Appellant has not raised this claim in his appellate brief; therefore, Appellant has abandoned this issue on appeal. *See* Pa.R.A.P. 2116(a), 2119(a); *see also Commonwealth v. McGill*, 832 A.2d 1014, 1018 n.6 (Pa. 2003) (finding waiver where the appellant abandoned claim on appeal).

[10] Our review of the record indicates that at the motion hearing Appellant only argued that the admission of Ms. Coen's statements violated his right to confrontation under the Sixth Amendment. *See* N.T. Mot. Hr'g, 10/25/21, at 19. Appellant first raised his claim regarding his rights under the Pennsylvania Constitution in his post-sentence motion. *See* Appellant's Post-Sentence Mot., 2/17/22, at 1-2 (unpaginated).

It is well-established "that a party complaining, on appeal, of the admission of evidence in the court below will be confined to the specific objection there made." *Commonwealth v. Cousar*, 928 A.2d 1025, 1041 (Pa. 2007). However, Article I, Section 9 of the Pennsylvania Constitution "affords the same protection as its federal counterpart with regard to the Confrontation Clause." *Commonwealth v. Geiger*, 944 A.2d 85, 97 n.6 (Pa. Super. 2008) (citations omitted). Therefore, Appellant's failure to raise his state constitutional claim at an earlier state of the proceedings before the trial court does not require a finding of waiver.

and Ms. Coen does not contain any threats, acts of intimidation or bribes by Appellant directed at Ms. Coen. *Id.* at 15-16. Appellant notes that Ms. Coen had already relocated to the State of New York when Appellant called her, and that she had done so of her own volition. *Id.* at 15-17.

Our standard of review is as follows:

> On appeals challenging an evidentiary ruling of the trial court, our standard of review is limited. A trial court's decision will not be reversed absent a clear abuse of discretion. Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. King*, 959 A.2d 405, 411 (Pa. Super. 2008) (citations omitted and formatting altered); *see also Commonwealth v. Elliott*, 80 A.3d 415, 446 (Pa. 2013) (stating that "appellate courts review a trial court's ruling on the admissibility of evidence for an abuse of discretion" (citation omitted)).

> The Sixth Amendment to the United States Constitution provides a criminal defendant with the right "to be confronted with the witnesses against him." U.S. Const. Amend. VI. Specifically, the Supreme Court of the United States held that the Confrontation Clause protects a criminal defendant's right to confront witnesses bearing testimony against him or her.

*Commonwealth v. Hajdarevic*, 236 A.3d 87, 90 (Pa. Super. 2020) (some citations omitted).

To be admissible, evidence must be relevant. Pa.R.E. 402. This means that "it logically tends to establish a material fact in the case, tends to make

a fact at issue more or less probable, or tends to support a reasonable inference or proposition regarding a material fact." ***Commonwealth v. Danzey***, 210 A.3d 333, 342 (Pa. Super. 2019) (citation omitted).[11]

"Hearsay is an out-of-court statement offered for the truth of the matter asserted. Hearsay generally is inadmissible unless it falls within one of the exceptions to the hearsay rule delineated in the Pennsylvania Rules of Evidence." ***Commonwealth v. W. Rivera***, 238 A.3d 482, 492 (Pa. Super. 2020) (citation omitted); ***see also*** Pa.R.E. 801(c), 802.

In ***Commonwealth v. D. Williams***, 103 A.3d 354 (Pa. Super. 2014), this Court explained that "the protection of the Confrontation Clause attaches only to testimonial hearsay." ***D. Williams***, 103 A.3d at 359; ***see generally Crawford v. Washington***, 541 U.S. 36 (2004). Testimonial statements are those whose primary purpose to establish facts potentially relevant to a future criminal prosecution, while nontestimonial statements are made to assist the police or others with an ongoing emergency. ***See D. Williams***, 103 A.3d at 359.

However, even when the Confrontation Clause applies to hearsay statements, the United States Supreme Court has held that where a defendant wrongfully procures a declarant's absence at trial, the defendant may forfeit his right to challenge the admission of the declarant's statements under the Confrontation Clause. ***Giles v. California***, 554 U.S. 353, 358-60, 371-72

---

[11] Appellant does not dispute the relevance of the victim's statements.

(2008). Specifically, the *Giles* Court explained that "two forms of testimonial statements were admitted at common law even though they were unconfronted[,]" and that one these common law doctrines, which the Court described to as "forfeiture by wrongdoing, permitted the introduction of statements of a witness who was 'detained' or 'kept away' by the 'means or procurement' of the defendant." *Id.* at 358-59 (citations omitted); *see also Davis v. Washington*, 547 U.S. 813, 833 (2006) (reiterating that "one who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation").

F.R.E. 804(b)(6) "codifies the [common law] forfeiture doctrine." *Giles*, 554 U.S. at 367 (quoting *Davis*, 547 U.S. at 833) (quotation marks omitted). Pa.R.E. 804(b)(6) is identical to F.R.E. 804(b)(6). *See Giles*, 554 U.S. at 367 n.2; Pa.R.E. 804(b)(6), Comment.

Pennsylvania Rule of Evidence 804 states, in relevant part:

**(b) The Exceptions.** The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness:

\* \* \*

**(6) Statement Offered Against a Party That Wrongfully Caused the Declarant's Unavailability.** A statement offered against a party that wrongfully caused — or acquiesced in wrongfully causing — the declarant's unavailability as a witness, and did so intending that result.

Pa.R.E. 804(b)(6); *see also Giles*, 554 U.S. at 367 (interpreting the identical rule at F.R.E. 804(b)(6) and explaining that the rule's intent requirement

"means that the exception applies only if the defendant has in mind the particular purpose of making the witness unavailable" (citations omitted)).

In **King**, this Court addressed the application of Pa.R.E. 804(b)(6)[12] as a matter of first impression. **King**, 959 A.2d at 414. The **King** Court explained:

> The trial court turned to relevant federal case law and found **United States v. Dhinsa**, 243 F.3d 635 (2d Cir. 2001), particularly instructive. We agree.
>
> \* \* \*
>
> [T]he **Dhinsa** Court provided an overview of the Confrontation Clause of the Sixth Amendment, the evolution of the "waiver-by-misconduct-doctrine" codified in F.R.E. 804(b)(6), and the rule's proper application. To determine the admissibility of evidence under the analogous federal rule, federal courts have required that an evidentiary hearing be held outside the jury's presence prior to the admission of the evidence in question. **See id.** at 653. **At the hearing, the prosecution must establish by a preponderance of the evidence that: "(1) the defendant (or party against whom the out-of-court statement is offered) was involved in, or responsible for, procuring the unavailability of the declarant . . . and (2) the defendant . . . acted with the intent of procuring the declarant's unavailability as an actual or potential witness." Id.** at 653–54.
>
> \* \* \*
>
> The logic of this conclusion can be distilled from the synopsis set forth in **Dhinsa**: (1) the essential purpose of confrontation is to secure a criminal defendant's fundamental right to cross-examination; (2) the constitutional right of confrontation, however, is not absolute and may be waived under certain

---

[12] Pa.R.E. 804(b)(6) was revised on March 18, 2013. The current Rule is substantially the same as the prior version. Therefore, **King** is applicable to the instant case.

circumstances; and (3) a defendant who engages in willful misconduct that renders the declarant unavailable waives his confrontation right. *Id.* at 651. All Circuit Courts of Appeals considering the matter of a defendant who has removed an adverse witness have similarly concluded that "simple equity" and "common sense" support a forfeiture principle so that "a defendant who wrongfully procures the absence of a witness or potential witness may not assert confrontation rights as to that witness." *Id.* at 652 (quoting *United States v. White*, 116 F.3d 903, 911 (D.C. Cir. 1997)).

*Id.* at 414-15 (footnote omitted and emphasis added).

The *King* Court agreed with trial court's decision to admit the victim's hearsay statement under Pa.R.E. 804(b)(6), noting that "the trial court conducted an evidentiary hearing and found by a preponderance of evidence that [the defendant] was motivated to kill [the victim] to eliminate the witness that connected [the defendant] to" a weapon used in another murder. *Id.* at 415 (citation omitted and formatting altered). The *King* Court additionally concluded that the admission of the statement did not violate defendant's confrontation rights based on the forfeiture by wrongdoing doctrine codified in F.R.E. 804(b)(6) and Pa.R.E. 804(b)(6). *Id.* at 416. Therefore, this Court concluded that "the trial court exercised reasonable judgment and correctly applied Pa.R.E. 804(b)(6)." *Id.* at 415.

Here, at the hearing on the Commonwealth's motion *in limine*, Trooper Naschke testified that she had listened to recordings of phone calls between Appellant and the victim that Appellant made from jail. *See* N.T. Mot. Hr'g, 10/25/21, at 10-11. Trooper Naschke explained that Appellant had asked the victim if she could make the charges against him go away and told her "to

- 14 -

disappear," because she could not be subpoenaed if the court did not know her address. ***See id.*** at 11-12, 15.

Further, the transcript of Appellant's phone calls with the victim indicates that Appellant asked the victim to make the charges "go away." Commonwealth's Ex. A at 1 (unpaginated). Appellant repeatedly told the victim not to come to court. ***See id.*** at 4-6. Appellant also advised the victim to "disappear" by going to New York and not to disclose her location to the police or prosecution because she could not be served with a subpoena if they did not know her location. ***See id.*** at 2-3. When the victim told Appellant she had already gone to New York, Appellant responded approvingly. ***See id.*** at 2. Lastly, Appellant told the victim that he wanted to marry her, not have her as an enemy, and Appellant repeatedly stated that he loved her. ***See id.*** at 1-2, 4.

Additionally, Ms. Coen clearly expressed her fear of Appellant's violent behavior and that she was intimidated and fearful that he would 'come for her' and retaliate against her:

> It's so bad that when I go outside to my car at night I'm f---ing scared that you're going to be out there and that you're coming for me[.]
>
>                     \*     \*     \*
>
> A broken nose and a cracked rib Jeff, like I was in the hospital . . . I wouldn't f---ing be alive right now, you straight up promised me you were going to bury me that day[.]

***Id.*** at 1 (formatting altered).

Ultimately, the trial court concluded that the statements that the victim made to Nurse McDowell during the SANE examination were admissible under Pa.R.E. 803(4) and Pa.R.E. 804(b)(6). N.T. Mot. Hr'g, 10/25/21, at 21. The trial court also found that the victim's statements to Trooper Naschke were admissible under Pa.R.E. 804(b)(6).[13]  *Id.* at 22.

_____

[13] We note that President Judge Hudock, who is now retired, did not place any findings of fact on the record during the hearing or in the order ruling on the Commonwealth's motion. **See** N.T. Mot. Hr'g, 10/25/21, at 21-22; Trial Ct. Order, 11/1/21.

Recently, in **Commonwealth v. Smith**, 277 A.3d 595 (Pa. Super. 2022) (*en banc*), an *en banc* panel of this Court considered an appeal from an order denying a defendant's motion to suppress. **Smith**, 277 A.3d at 599-600. However, the suppression judge in **Smith** did not make any factual findings at the time that he denied the defendant's motion and did not issue a Rule 1925(a) opinion because he had subsequently retired from the bench. **Id.** at 603, 606. The **Smith** Court, noting that Pa.R.Crim.P. 581(I) requires that a suppression court place its findings of fact and conclusions of law on the record, concluded that it could not "properly review the suppression court's decision, and assess the arguments made by the parties, based on the record currently before [this Court]." **Id.** at 605. Therefore, the Court vacated the defendant's judgment of sentence and remanded for the trial court to conduct a new suppression hearing and issue findings of fact and conclusions of law. **Id.** at 606.

The instant case is distinguishable from **Smith** because this case does not involve an appeal from a motion to suppress. In a suppression case, this Court is bound by the factual findings of the suppression court, but our review of the suppression court's conclusions of law is plenary. **See id.** at 602. However, when reviewing a trial court's evidentiary ruling, this Court applies an abuse of discretion standard. **See King**, 959 A.2d at 411; **see also Elliott**, 80 A.3d at 446. Although President Judge Hudock did not place specific findings of fact on the record, the record is sufficiently developed for this Court to review the decision to admit the victim's hearsay statements for an abuse of discretion. Therefore, remand for the trial court to make factual findings is not necessary here, and will we address the merits of Appellant's claim.

- 16 -

Based on our review of the record, we conclude that the trial court did not abuse its discretion in admitting the victim's statements under Pa.R.E. 804(b)(6). **See Elliott**, 80 A.3d at 446; **King**, 959 A.2d at 411. Although Appellant did not bribe nor threaten the victim directly on the call, Ms. Coen expressed fear of physical violence and retaliation from Appellant. Nevertheless, he advised her not to come to court and instructed her on how to avoid receiving subpoenas so that his charges would "go away." He also made romantic overtures to the victim in an effort to persuade her not to testify at trial. The record establishes that Appellant was involved in procuring the victim's unavailability as a witness and that he acted with the intent of procuring that unavailability. **See King**, 959 A.2d at 414. Therefore, the trial court properly admitted the victim's statements under Rule 804(b)(6).

Furthermore, the trial court's decision to admit the victim's statements pursuant to Rule 804(b)(6) did not violate Appellant's constitutional right to confront witnesses against him because the Rule codifies the common law doctrine that a defendant forfeits that right when the defendant wrongfully obtains the witness's absence from the trial. **See Giles**, 554 U.S. at 367 & n.2; **Davis**, 547 U.S. at 833; **King**, 959 A.2d at 416. For these reasons, Appellant is not entitled to relief on his claim.

**Merger**

We also address whether any of Appellant's convictions merge because questions concerning merger implicate the legality of a sentence, and this Court may address such issues *sua sponte*. **See Commonwealth v. Watson**,

- 17 -

228 A.3d 928, 941 (Pa. Super. 2020). Here, as noted previously, Appellant argued at sentencing that his aggravated indecent assault and indecent assault convictions should merge with his rape conviction and that his simple assault conviction should merge with his strangulation conviction. *See* N.T. Sentencing Hr'g, 2/7/22, at 5. Although Appellant did not raise his merger claims on appeal, generally, a challenge to the legality of a sentence cannot be waived. *See Commonwealth v. Milhomme*, 35 A.3d 1219, 1221 (Pa. Super. 2011). "An illegal sentence must be vacated." *Commonwealth v. Tucker*, 143 A.3d 955, 960 (Pa. Super. 2016) (citation omitted).

When reviewing the legality of a sentence, "our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Tighe*, 184 A.3d 560, 584 (Pa. Super. 2018) (citations omitted).

Section 9765 of the Sentencing Code provides that:

No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765.

This Court has explained, "[t]he statute's mandate is clear. It prohibits merger unless two distinct facts are present: 1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other." *Commonwealth v. Martinez*, 153 A.3d 1025, 1030 (Pa. Super. 2016) (citations omitted).

- 18 -

"If the offenses stem from two different criminal acts, merger analysis is not required." *Commonwealth v. M. Williams*, 958 A.2d 522, 527 (Pa. Super. 2008) (citation omitted).

The *Martinez* Court further explained:

When considering whether there is a single criminal act or multiple criminal acts, the question is not whether there was a "break in the chain" of criminal activity. The issue is whether the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime, then the actor will be guilty of multiple crimes which do not merge for sentencing purposes.

In determining whether two or more convictions arose from a single criminal act for purposes of sentencing, we must examine the charging documents filed by the Commonwealth.

*Martinez*, 153 A.3d at 1030-31 (citations omitted and formatting altered).

Here, the trial court did not address Appellant's merger claims in its Rule 1925(a) opinion. However, the record reflects that the charges for strangulation and simple assault were based on separate criminal acts. Specifically, the criminal information states that Appellant committed the offense of strangulation when he "did place both of his hands around the neck of the victim, Ashley M. Coen restricting her ability to breathe[.]" Criminal Information, Docket No. 150-2021, 7/2/18, at 1 (unpaginated). However, the information reflects that Appellant was charged with simple assault under Subsection 2701(a)(1) because he "attempt[ed] to cause or intentionally, knowingly[,] or recklessly cause[d] bodily injury to" the victim. *Id.* At trial, the Commonwealth presented evidence establishing that Appellant committed

separate acts in which he placed his hands around the victim's throat, dragged the victim by the hair, and repeatedly punched the victim with a closed fist. *See* N.T. Trial, 8/26/21, at 49-52, 64. Therefore, because the charges for strangulation and simple assault were based on separate criminal acts, they do not merge for sentencing purposes.[14] *See Martinez*, 153 A.3d at 1030-31; *M. Williams*, 958 A.2d at 527.

However, it is clear that the Commonwealth charged Appellant with aggravated indecent assault, indecent assault, and rape based on identical conduct. Specifically, counts one, two, and four of the criminal information state that Appellant inserted his penis into the victim's vagina by forcible compulsion. *See* Criminal Information, Docket No. 150-2021, 7/2/18, at 1 (unpaginated). Further, the evidence presented at trial established a single act of Appellant inserting his penis into the victim's vagina by forcible compulsion. *See* N.T. Trial, 8/26/21, at 53, 64. Therefore, because we conclude that these three convictions arose from the same criminal act, we must examine whether all of the statutory elements of aggravated indecent

---

[14] Even if Appellant's convictions for strangulation and simple assault arose from a single criminal act, they would not merge because each offense includes an element not found in the other offense. Simple assault includes the element of "attempt[ing] to cause or intentionally, knowingly or recklessly caus[ing] bodily injury to another," while strangulation includes the element of "knowingly or intentionally imped[ing] the breathing or circulation of the blood" and "applying pressure to the throat or neck[.]" *Compare* 18 Pa.C.S. § 2701(a)(1) *with* 18 Pa.C.S. § 2718(a)(1). Therefore, simple assault does not merge with strangulation because "all of the statutory elements" of simple assault are not included in the statutory elements of strangulation. *See* 42 Pa.C.S. § 9765; *see also Martinez*, 153 A.3d at 1030.

assault and/or indecent assault are included in the statutory elements of rape. *See Martinez*, 153 A.3d at 1030-31; *see also Commonwealth v. Baldwin*, 985 A.2d 830, 837, n.6 (Pa. 2009) (noting that for the purposes of merger "trial courts must take care to determine which particular 'offenses,' *i.e.* violations of law, are at issue in a particular case" because the elements of different subsections of statutes set forth different elements).

Rape by forcible compulsion is defined as follows:

> **(a) Offense defined.**—A person commits a felony of the first degree when the person engages in sexual intercourse with a complainant:
>
> > (1) By forcible compulsion.

18 Pa.C.S. § 3121(a)(1).

Aggravated indecent assault by forcible compulsion is defined as follows:

> **(a) Offense defined.**—Except as provided in sections 3121 (relating to rape), 3122.1 (relating to statutory sexual assault), 3123 (relating to involuntary deviate sexual intercourse) and 3124.1 (relating to sexual assault), a person who engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures commits aggravated indecent assault if:
>
> > \* \* \*
>
> > (2) the person does so by forcible compulsion[.]

18 Pa.C.S. § 3125(a)(2).

Indecent assault by forcible compulsion is defined as follows:

**(a) Offense defined.**—A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:

\* \* \*

(2) the person does so by forcible compulsion[.]

18 Pa.C.S. § 3126(a)(2).

"Forcible compulsion" is defined as "[c]ompulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied. The term includes, but is not limited to, compulsion resulting in another person's death, whether the death occurred before, during or after sexual intercourse."   18 Pa.C.S. § 3101.   "Indecent contact" is defined as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." *Id.* "Sexual intercourse," for the purposes of Title 18 Chapter 31 is defined as "[i]n addition to its ordinary meaning, includes intercourse per os or per anus, with some penetration however slight; emission is not required."   *Id.*; *see also Commonwealth v. Wall*, 953 A.2d 581, 584 (Pa. Super. 2008) (stating that "penetration, however slight, with the penis is necessary to establish the element of sexual intercourse [in a prosecution for rape]" (citation omitted and formatting altered)).

This Court has recognized that indecent assault does not merge with rape because each contains an element not found in the other.

*Commonwealth v. Carbaugh*, 982 MDA 2019, 2020 WL 433533, at \*9-10 (Pa. Super. filed Jan. 28, 2020) (unpublished mem.) (concluding that indecent assault of a child, 18 Pa.C.S. § 3126(a)(7), does not merge with rape of a child, 18 Pa.C.S. § 3121(c));[15] *accord Commonwealth v. J. Rivera*, 255 A.3d 497, 510-11 (Pa. Super. 2021) (concluding that the defendant suffered prejudice when the Commonwealth amended the information mid-trial to upgrade the charges of indecent assault of a child from misdemeanors to felonies because although the defendant had also been charged with rape, indecent assault contained an element not found in rape, therefore the amendment added new facts), *appeal granted on other grounds*, 273 A.3d 510 (Pa. 2022).  Specifically, indecent assault contains the element that the purpose of the indecent contact was to arouse sexual desire in the perpetrator or in the complainant, which rape does not require.  *Compare* 18 Pa.C.S. § 3126(a) *with* 18 Pa.C.S. § 3121(a).  Further, rape requires some penetration, however slight, of the complainant's genitals, mouth, or anus, which is not an element of indecent assault.  *Compare* 18 Pa.C.S. § 3121(a) *and Wall*, 953 A.2d at 584 *with* 18 Pa.C.S. § 3101 (defining "indecent contact").

Likewise, indecent assault does not merge with aggravated indecent assault for the same reason, as each contains an element not found in the other offense.  *See Commonwealth v. Allen*, 856 A.2d 1251, 1253-54 (Pa. Super. 2004) (concluding that aggravated indecent assault of a child, 18

---

[15] We may cite to unpublished memorandum decisions of this Court filed after May 1, 2019, for their persuasive value.  *See* Pa.R.A.P. 126(b).

Pa.C.S. § 3125(a)(7) did not merge with indecent assault of a child, 18 Pa.C.S. § 3126(a)(7)); *see also* 18 Pa.C.S. § 3125(a) (aggravated indecent assault includes the element of "penetration, however slight, of the genitals or anus of a complainant").

Therefore, because rape and indecent assault each contain an element not found in the statutory definition of the other offense, Appellant's rape and indecent assault convictions do not merge. *See Carbaugh*, 2020 WL 433533, at *10; *accord J. Rivera*, 255 A.3d at 510-11. For the same reasons, we conclude that Appellant's indecent assault conviction does not merge with his aggravated indecent assault conviction. *See Allen*, 856 A.2d at 1253-54.

Finally, we must address whether Appellant's conviction for aggravated indecent assault merges with his conviction for rape. Appellant was charged with aggravated indecent assault under Section 3125(a)(2), which requires proof that a defendant penetrated another's genitals or anus by forcible compulsion. *See* 18 Pa.C.S. § 3125(a)(2). Appellant was also charged with rape under Section 3121(a)(1), which requires proof that a defendant engaged in sexual intercourse with a complainant by forcible compulsion. *See* 18 Pa.C.S. § 3121(a)(1). A defendant penetrating another person's genitals with his penis constitutes sexual intercourse. *See Wall*, 953 A.2d at 584. Likewise, a defendant inserting his penis into a complainant's vagina constitutes penetrating another's genitals with any part of the defendant's body. Therefore, because the statutory elements of aggravated indecent assault under Section 3125(a)(2) are included in the statutory elements of

rape under Section 3121(a)(1), we conclude that Appellant's aggravated indecent assault conviction should have merged with his rape conviction for sentencing purposes. **See Martinez**, 153 A.3d at 1030. Although we do not disturb Appellant's conviction for aggravated indecent assault, we vacate the sentence imposed on count two. **See, e.g.**, **Tucker**, 143 A.3d at 968 (affirming the defendant's convictions but vacating an illegal sentence).

Because the trial court imposed a concurrent sentence for aggravated indecent assault, our disposition does not upset the trial court's overall sentencing scheme, therefore we need not remand for resentencing. **See Commonwealth v. Thur**, 906 A.2d 552, 569-70 (Pa. Super. 2006).

### Conclusion

For these reasons, we affirm Appellant's convictions, but vacate the sentence for aggravated indecent assault, and we affirm the judgments of sentence in all other respects.

Judgments of sentence affirmed in part, and vacated in part as to the sentence for aggravated indecent assault.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/18/2023