J-S32042-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                              :            PENNSYLVANIA
                              :
           v.                    :
                              :
                              :
ANTHONY UVON STARKS         :
                              :
          Appellant         :     No. 1218 MDA 2022

Appeal from the PCRA Order Entered July 22, 2022
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0007085-2018

BEFORE: DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:         **FILED: DECEMBER 28, 2023**

Appellant Anthony Uvon Starks appeals from the order dismissing his timely first Post-Conviction Relief Act[1] (PCRA) petition. Appellant argues that the PCRA court erred in granting the petition to withdraw filed by Anthony Tambourino, Esq. (PCRA Counsel) pursuant to **Turner**/**Finley**[2] and in failing to appoint new PCRA counsel. We affirm.

This Court previously summarized the relevant facts and procedural history of this matter as follows:

> On October 25, 2018, Tarsha Eaddy drove from her home in Maryland to the King's Inn Motel in York County, Pennsylvania to check on her mother, Edna Pinder ("Decedent"), whom she had been unable to contact for several days. Upon her arrival, Eaddy

---

[1] 42 Pa.C.S. §§ 9541-9546.

[2] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

did not see Decedent's car—which Decedent never loaned to anyone—in the motel's parking lot. Eaddy entered the motel through a side entrance and went upstairs to Decedent's unit, where she knocked on the door. Eaddy could hear the television but received no response, so she proceeded to the lobby and asked the front desk clerk to unlock Decedent's door. Upon entering the apartment, Eaddy saw numerous pieces of mail on the floor. As she proceeded further into the apartment, Eaddy saw Decedent in a basket in the corner and began screaming. She testified that Decedent was "slumped against the wall, and her head was positioned to the side in a very unnatural way. There was vomit coming from her mouth and it was very apparent that she was not alive." Eaddy noted that Decedent's cell phone was missing. Eaddy was aware that Decedent had been in a relationship with [Appellant], but [she] believed that relationship had ended years earlier.

Amber Kress, the Decedent's neighbor, heard Eaddy's screams and went to Decedent's apartment, where she called 9-1-1. Kress testified that she had heard screams coming from Decedent's apartment a few days earlier, between 3:00 and 4:00 in the morning, but thought little of it as there was always fighting in the building. Kress was familiar with [Appellant] and believed that he had been living with Decedent.

Officer Thomas Ewald of the York City Police Department responded to the scene. Upon entering the Decedent's unit, Officer Ewald observed the Decedent lying in a basket with apparent blood in her mouth. Realizing she was deceased, Officer Ewald called for a supervisor and a coroner. When the coroner arrived, Officer Ewald assisted her in moving the body to the floor, at which time he observed several puncture marks over the Decedent's left breast/heart area. He also observed blood spatter "from the right to the left, where the victim was." He saw blood spatter on the east, west, and north walls of the apartment, as well as a bloody handprint on the bed sheets and small smears of blood on the wall. Officer Ewald also observed three empty bottles of vodka and three containers of prescription medication. Officer Ewald stated that the unit's window, which was over seven feet from the bedroom floor, was unopened when he arrived on the scene.

Deputy Coroner Tanya Zech of the York County Coroner's Office was dispatched to the scene. She testified that she observed "blood splatter, . . . empty vodka bottles, . . . men's boxer briefs,

- 2 -

[and a] baseball cap laying on the floor[,] and personal effects." Deputy Coroner Zech observed the Decedent lying in a basket; there was "bloody purge" coming from her mouth and the tips of her fingers and toes were dehydrated and blackened, indicating that she had been there "for a decent amount of time." In moving the Decedent's body to the floor to be placed in a body bag, Deputy Coroner Zech observed several wounds and lacerations to the chest. Having observed those wounds, she ceased her assessment and called for detectives, as she believed the Decedent's death to be suspicious.

York City Police Detective Daniel Craven responded to the scene in his capacity as a certified crime technician. After being verbally informed that a search warrant had been obtained for the premises, he entered the Decedent's apartment, performed a walk-through, and began taking photographs. Detective Craven noted that there were blood stains and spatter on the walls, bed sheets, and pillow cases. He also observed a black baseball hat, a pair of men's blue boxer shorts, a bag of dirty laundry, and mail addressed to [Appellant]. He noted that the window was closed with no signs of forced entry. Detective Craven collected several items from the scene, including: a change of address form dated October 12, 2018, changing [Appellant's] address to the Decedent's residence at the King's Inn Motel; mail addressed to [Appellant] from the Social Security Administration; two bottles of vodka; a cigarette butt; and bed sheets and pillowcases.

York City Police Detective Christopher Perry served as the lead crime scene technician on the case. Shortly after arriving at and assessing the scene, Detective Perry left to secure a search warrant. After doing so, he returned to the crime scene. He noted that the front door to the apartment showed no signs of a break-in and that the lock and hinges appeared to be in working order. Similarly, the window was closed and locked from the inside and showed no signs of tampering. Although there was soil on the ground outside the window, there was no evidence inside the apartment of soil or any other material that would suggest entry through the window. Later that night, Detective Perry learned that the Decedent owned a black Chrysler 200, which was not present in the parking lot of the motel. He entered the vehicle's information into the National Crime Information Computer ("NCIC") to enable a "stop and hold" to be placed on the vehicle in the event it was located. On October 31, 2018, Detective Perry was informed that the Decedent's vehicle had been located in Baltimore, Maryland, with [Appellant] behind the wheel. After

obtaining a warrant to search the car, Detective Perry recovered a knife, an unopened bottle of bleach, and a towel from the vehicle.

Doctor Rameen Starling-Roney, a forensic pathologist, performed the autopsy on Decedent. He concluded that her body was in a state of "mild decomposition" and was past the 12-to-24-hour period of rigor mortis. Toxicology analysis revealed the presence of diphenhydramine, which is the main ingredient in Benadryl, in Decedent's blood, as well as cocaine and alcohol. Doctor Starling-Roney observed eleven stab wounds to the upper-left corner of the chest, one stab wound on the level of the left nipple, one stab wound to the middle chest, and one stab wound on the left forearm—possibly a defensive wound. He testified that the cause of death was multiple sharp force injuries and the manner of death was homicide.

Ross Dean, the owner of the King's Inn Motel, testified that he was familiar with Decedent and [Appellant] and believed them to be paramours living together at the motel. Dean testified that the property had a surveillance system comprised of 16 cameras that recorded 24 hours a day. He stated that, during the period of October 21 through 25, 2018, the system was working properly, but that it would not have been unusual for the time stamps to be slightly off. Dean testified that there was a camera positioned such that it would have captured anyone entering or leaving Decedent's apartment door.

Josh Seiple, an employee of a pawn shop in York City called "York Buy Sell Trade," testified that, on October 22, 2018, [Appellant] came into the store at 10:03 a.m. and sold a Samsung S7 Edge cell phone using a Maryland state identification card issued in [Appellant's] name.

York City Police Detective Anthony Fetrow subsequently reviewed interior video surveillance footage from York Buy Sell Trade and observed [Appellant] selling the phone to Seiple at approximately 10:00 a.m. on October 22, 2018. Detective Fetrow also viewed surveillance video from a nearby convenience store showing [Appellant] exiting Decedent's vehicle and walking in the vicinity of York Buy Sell Trade at approximately 8:11 a.m. on October 22, 2018. A second video from the convenience store showed [Appellant] walking in the direction of the pawn shop at approximately 9:39 a.m. on that same date. A third video shows [Appellant] exiting the pawn shop after selling the phone and

walking toward the driver's side of Decedent's vehicle. Detective Fetrow also recovered the phone [Appellant] sold to the pawn shop and confirmed it as Decedent's cell phone.

Detective David Swinney, of the Baltimore County Police Department, testified that he is a member of the warrant task force assigned to the U.S. Marshals' fugitive task force. In that capacity, he was provided with [Appellant's] name and a description of Decedent's vehicle, as well as information that [Appellant] frequented the area of 25th Street and Greenmount Avenue in Baltimore City. On October 31, 2018, Detective Swinney and members of the fugitive task force apprehended [Appellant] while he was driving Decedent's vehicle and placed him under arrest. During a search incident to arrest, Detective Swinney found two credit cards in the Decedent's name in [Appellant's] front pocket.

Finally, York City Police Detective Travis Sowers testified that he interviewed the Decedent's family and confirmed that Decedent was last heard from at 1:32 a.m. on the morning of October 21, 2018, via a text message to her sister. Detective Sowers subsequently viewed all surveillance video from King's Inn Motel, beginning from the last time Decedent was known to be alive. Detective Sowers testified that there were no gaps in the footage and that the relevant portions came from two cameras—Channel 5, located in the hallway outside Decedent's apartment, and Channel 7, located near an exit of the building near where Decedent's vehicle was parked. Detective Sowers compiled the relevant footage on two DVDs, which were admitted as Commonwealth Exhibits 65 (Channel 5) and 66 (Channel 7). He testified that the time indicated on the video was twenty minutes behind actual time and that no one other than Decedent and Sowers was ever seen entering Decedent's apartment.

Detective Sowers testified that the first video clip, at 11:23 p.m. on October 21, 2018, showed [Appellant] and the Decedent outside the Decedent's apartment. [Appellant] had just exited the apartment and appeared to be wearing the same jacket he was seen in the next morning at the pawn shop. Approximately seven minutes later, at 11:30 p.m., [Appellant] was seen re-entering Decedent's apartment. Twenty minutes after that, at 11:50 p.m., Decedent is seen exiting her unit. Thereafter, at 12:11 a.m. on October 22, 2018, Decedent is seen returning to her apartment. She was never seen alive on video again.

Approximately one hour after Decedent was last seen entering her apartment, at 1:11 a.m., [Appellant] is seen exiting the unit alone. Detective Sowers testified that [Appellant] appeared to be walking "much faster" than in previous video clips. [Appellant] is then captured entering the Decedent's vehicle and driving away. Ten minutes later, at 1:22 a.m., [Appellant] is seen re-entering Decedent's apartment. Five minutes later, at 1:27 a.m., [Appellant] is captured on video removing a television from Decedent's apartment and placing it in her vehicle at 1:28 a.m. He then enters the vehicle and drives away. [Appellant] returns approximately fifty minutes later, at 2:12 a.m., and re-enters Decedent's apartment.

Thereafter, at 5:13 a.m., [Appellant] is captured exiting Decedent's apartment carrying several bags filled with "unknown items." [Appellant] placed some of the bags in Decedent's vehicle before re-entering Decedent's apartment at 5:15 a.m. At 5:16 a.m., [Appellant] is captured leaving Decedent's apartment for the final time, carrying several items, including the bleach bottle later found in Decedent's car. Finally, at 5:21 a.m., [Appellant] departs in Decedent's vehicle and does not return. Between the last time [Appellant] departed and the time Tarsha Eaddy enters on October 25, 2018, no one is ever seen entering or leaving Decedent's apartment.

[Appellant] was charged with criminal homicide and robbery. On November 18, 2019, [Appellant] proceeded to a jury trial before the Honorable Gregory M. Snyder on charges of first-, second-, and third-degree murder. On November 20, 2019, the jury convicted [Appellant] of murder in the first and second degree. On December 31, 2019, Judge Snyder sentenced [Appellant] to two concurrent terms of life imprisonment without the possibility of parole. [Appellant] filed a post-sentence motion,[3] which the trial court denied on May 19, 2020. . . .

_____

[3] Ronald W. Jackson, Esq. (Trial Counsel), of the York County Public Defender's Office, entered his appearance and represented Appellant at trial and through post-sentence motions. *See* Entry of Appearance, 1/11/19; *see also* Post-Sent. Mot., 1/10/20.

- 6 -

*Commonwealth v. Starks*, 831 MDA 2020, 2021 WL 798905, at \*1–4 (Pa. Super. filed Mar. 2, 2021) (*Starks I*) (unpublished mem.) (citations and footnotes omitted, some formatting altered).

Appellant filed a timely appeal. After review, this Court affirmed Appellant's judgment of sentence for first-degree murder and vacated Appellant's sentence for second-degree murder. *See id.* at \*9.[4] Our Supreme Court denied Appellant's petition for allowance of appeal. *Commonwealth v. Starks*, 157 MAL 2021, 258 A.3d 408 (Pa. filed Jul. 7, 2021) (*Starks II*).

Appellant filed a timely *pro se* PCRA petition on September 28, 2021. The PCRA court appointed PCRA Counsel, who filed a no-merit letter and petition to withdraw pursuant to *Turner*/*Finley* on February 25, 2022. On June 24, 2022, the PCRA court granted PCRA counsel's motion to withdraw, and that same day, it filed a notice of intent to dismiss Appellant's PCRA petition without a hearing pursuant to Pa.R.Crim.P. 907. *See* Order, 6/24/22; Rule 907 Notice, 6/24/22.

On July 19, 2022, Appellant filed a *pro se* response to the PCRA court's Rule 907 notice in which he argued for the first time that Trial Counsel was ineffective for failing to assert that the Commonwealth improperly relied on hearsay at the preliminary hearing. *See Pro Se* Response, 7/19/22, at 2-5. On July 22, 2022, the PCRA court dismissed Appellant's PCRA petition, and in

---

[4] Specifically, although this Court affirmed the first-degree murder count, it concluded that the evidence was insufficient to prove that Appellant intended to rob Decedent, and therefore, it vacated Appellant's conviction for second-degree murder, based on felony murder. *See Starks I*, at \*9.

its order, it incorporated the rationale set forth in its Rule 907 notice. **See** Order, 7/22/22, at 1 (citing Rule 907 Notice, 6/24/22). The PCRA court further explained that the issue Appellant raised in response to the Rule 907 notice was meritless because any defect in Appellant's preliminary hearing was cured at trial. **See id.** at 1-2.

Appellant filed a timely notice of appeal. Both the PCRA court and Appellant have complied with Pa.R.A.P. 1925.[5]

On appeal, Appellant presents the following issues:

1. Whether it was permissible for the Commonwealth to have relied upon solely "hearsay" evidence to establish a *prima facie* case against Appellant during appellant's preliminary hearing?

_____

[5] On August 23, 2022, the PCRA court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) within twenty-one days. Accordingly, Appellant's Rule 1925(b) statement was due on or before Tuesday, September 13, 2022. The record reflects that Appellant's Rule 1925(b) statement was filed on the PCRA court docket on September 20, 2022, and the envelope attached to it was post-marked September 16, 2022. There is no indication that Appellant presented his Rule 1925(b) statement to prison authorities prior to September 16, 2022. Therefore, even with the application of the prisoner mailbox rule, Appellant's Rule 1925(b) statement was untimely filed. **See Commonwealth v. DiClaudio**, 210 A.3d 1070, 1074 (Pa. Super. 2019) ("[T]he prisoner mailbox rule provides that a *pro se* prisoner's document is deemed filed on the date he delivers it to prison authorities for mailing."). However, because the PCRA court addressed the merits of Appellant's issues in its Rule 1925(a) opinion, we conclude that we may proceed with substantive review. **See** PCRA Ct. Op., 10/18/22; **see also Commonwealth v. Presley**, 193 A.3d 436, 441 (Pa. Super. 2018) ("[I]n criminal cases, remand, not waiver, results from the late filing of a [Rule 1925(b)] statement, unless the trial court addressed the issues raised in a late-filed statement. In those circumstances, no remand is necessary, and this Court may address the merits of issues.") (citation and footnote omitted).

2. Whether it was permissible for [PCRA Counsel] to have determined a petition to withdraw as counsel, accompanied with written correspondence pursuant to [**Turner**/**Finley**] was warranted regarding Appellant's case-matter, notwithstanding Appellant having possessed an ineffective assistance of counsel claim relative to his trial counsel having failed to file a pre-trial petition for writ of *habeas corpus* predicated upon the Commonwealth having relied upon solely "hearsay" evidence to establish a *prima facie* case against Appellant during Appellant's preliminary hearing?

3. Whether it was permissible for the [PCRA] court to have determined Appellant's asserted ineffective assistance of counsel claim relative to [Trial Counsel] having failed to file a pre-trial petition for writ of *habeas corpus* predicated upon the Commonwealth having relied upon solely "hearsay" evidence to establish a *prima facie* case against Appellant during Appellant's preliminary hearing, which, indeed, was meritorious, was moot, on the basis of Appellant having been convicted of, *inter alia*, the criminal offense murder in the first degree at the conclusion of his trial by jury?

4. Whether it was permissible for the [PCRA] court to have granted [PCRA Counsel's petition to withdraw pursuant to **Turner**/**Finley**] and denied [Appellant's *pro se* PCRA petition] notwithstanding Appellant having possessed, and asserted an ineffective assistance of counsel claim relative to his trial counsel having failed to file a pre-trial petition for writ of habeas corpus predicated upon the Commonwealth having relied upon solely "hearsay" evidence to establish a *prima facie* case against him during his preliminary hearing, which, indeed, was meritorious, for the [PCRA] court's consideration?

5. Whether it was permissible for the [PCRA] court to have denied the request relative to Appellant being provided with a competent and effective court-appointed counsel during the trial stage of Appellant's initial [PCRA] proceeding filed by Appellant, *pro se*, notwithstanding Appellant having possessed, and asserted an ineffective assistance of counsel claim relative to Appellant's trial counsel having failed to file a pre-trial petition for writ of *habeas corpus* predicated upon the Commonwealth having relied upon solely "hearsay" evidence to establish a *prima facie* case against Appellant during Appellant's preliminary hearing, which, indeed, was meritorious, for the [PCRA] court's consideration?

6. Whether it was permissible for the [PCRA] court to have denied the request relative to Appellant being provided with a competent and effective court-appointed counsel during the appeal stage of Appellant's initial [PCRA] proceeding filed by Appellant, *pro se*, notwithstanding Appellant having possessed, and asserted an ineffective assistance of counsel claim relative to his trial counsel having failed to file a pre-trial petition for writ of *habeas corpus* predicated upon the Commonwealth having relied upon solely "hearsay" evidence to establish a *prima facie* case against him during his preliminary hearing, which, indeed, was meritorious, for the [PCRA] court's consideration?

Appellant's Brief at 4-5 (some formatting altered).

**Trial Counsel's Ineffectiveness**

Appellant's first five issues involve Trial Counsel's alleged ineffectiveness for failing to file a petition for *habeas corpus* challenging the Commonwealth's reliance hearsay at the preliminary hearing.[6]  ***See*** Appellant's Brief at 19-24.[7]  Specifically, Appellant argues that the PCRA court erred in granting PCRA Counsel's motion to withdraw because Appellant had a meritorious issue concerning the Commonwealth's reliance on hearsay at the preliminary hearing.  ***See id.*** at 20-24.

The Commonwealth contends that Appellant's claim is meritless because any defect at the preliminary hearing was cured at trial.  Commonwealth's

---

[6] In the argument section of his brief, Appellant addresses these claims as a single issue.  ***See*** Appellant's Brief at 19-24.  Further, because these claims are interrelated, we address them as a single issue.

[7] Apart from the claim concerning Trial Counsel's alleged ineffectiveness at the preliminary hearing, Appellant does not challenge the PCRA court's disposition of any issues raised in his PCRA petition or the PCRA court's order granting PCRA Counsel's motion to withdraw pursuant to ***Turner***/***Finley***.

Brief at 21. Alternatively, the Commonwealth argues that at the time of Appellant's preliminary hearing on November 26, 2018, relevant legal authority permitted the Commonwealth to rely on hearsay to establish a *prima facie* case, and Trial Counsel cannot be deemed ineffective for failing to predict a change in the law. *See id.* at 22-23.[8]

Our review of an order denying PCRA relief is limited to "whether the record supports the PCRA court's determination and whether the PCRA court's decision is free of legal error." *Commonwealth v. Lawson*, 90 A.3d 1, 4 (Pa. Super. 2014) (citations omitted). "[W]e apply a *de novo* standard of review to the PCRA court's legal conclusions." *Commonwealth v. Mitchell*, 105 A.3d 1257, 1265 (Pa. 2014) (citation omitted); *see also*

---

[8] At the time of Appellant's preliminary hearing on November 26, 2018, the Commonwealth was permitted to rely on hearsay evidence alone to establish a *prima facie* case. *See Commonwealth v. Ricker*, 120 A.3d 349 (Pa. Super. 2015) (permitting the Commonwealth to establish a *prima facie* case based on hearsay alone). Our Supreme Court subsequently disapproved of the holding in *Ricker*, and it ruled that while hearsay evidence can be used to prove any element of a crime at a preliminary hearing, it cannot be the sole basis for a *prima facie* case. *See Commonwealth v. McClelland*, 233 A.3d 717, 721 (Pa. 2020). "It is well-settled that counsel cannot be held ineffective for failing to anticipate a change in the law." *Commonwealth v. Drummond*, 285 A.3d 625, 645 (Pa. 2022) (citation omitted). Accordingly, Appellant's claim that trial counsel should have challenged the Commonwealth's *prima facie* case based on hearsay alone would have been facially futile under then-binding case law of *Ricker*. *See Commonwealth v. Rivera*, 255 A.3d 497, 504 n.23 (Pa. Super. 2021) (*Rivera I*), *reversed on other grounds by Commonwealth v. Rivera*, 296 A.3d 1141 (Pa. 2023) (*Rivera II*). Therefore, we agree with the Commonwealth's alternative argument that Trial Counsel cannot be deemed ineffective for failing to predict a change in the law and be considered ineffective for failing to challenge the reliance on hearsay alone at the preliminary hearing. *See* Commonwealth's Brief at 21; *see also Drummond*, 285 A.3d at 645.

*Commonwealth v. Davis*, 262 A.3d 589, 595 (Pa. Super. 2021) (stating that

"[t]his Court grants great deference to the findings of the PCRA court if the

record contains any support for those findings" (citation omitted)).

Moreover, when reviewing a claim of ineffective assistance of counsel,

we are governed by the following standard:

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.
>
> We have explained that a claim has arguable merit where the factual averments, if accurate, could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination.
>
> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.
>
> Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043-44 (Pa. Super. 2019)

(citations omitted and formatting altered).

Further, counsel's obligations in filing a no-merit letter pursuant to the mandates of **Turner**/**Finley** are as follows:

> The no-merit letter must set forth: 1) the nature and extent of counsel's review of the case; 2) each issue that the petitioner wishes to raise on appeal; and 3) counsel's explanation of why each of those issues is meritless. Where PCRA counsel's no-merit letter does not discuss all of the issues that the convicted defendant has raised in a first PCRA petition and explain why they lack merit, it does not satisfy these mandatory requirements and dismissal of the PCRA petition without requiring counsel to file an amended PCRA petition or a further, adequate no-merit letter is a deprivation of the right to counsel on the PCRA petition.

**Commonwealth v. Kelsey**, 206 A.3d 1135, 1139 (Pa. Super. 2019) (citations omitted).

> The **Turner**/**Finley** decisions provide the manner for post-conviction counsel to withdraw from representation. The holdings of those cases mandate an independent review of the record by competent counsel before a PCRA court or appellate court can authorize an attorney's withdrawal. The necessary independent review requires counsel to file a "no-merit" letter detailing the nature and extent of his review and list each issue the petitioner wishes to have examined, explaining why those issues are meritless. The PCRA court, or an appellate court if the no-merit letter is filed before it, . . . then must conduct its own independent evaluation of the record and agree with counsel that the petition is without merit. **See Commonwealth v. Pitts**, 981 A.2d 875, 876 n.1 (Pa. 2009).

**Commonwealth v. Rykard**, 55 A.3d 1177, 1184 (Pa. Super. 2012) (formatting altered and footnote omitted), *abrogated on other grounds by* **Commonwealth v. Bradley**, 261 A.3d 381 (Pa. 2021).

Here, as noted previously, Appellant did not raise trial counsel's ineffectiveness at the preliminary hearing in his PCRA petition. Although

Appellant raised the issue in response to the PCRA court's Rule 907 notice, Appellant did not seek to amend his PCRA petition to include that claim. *See Commonwealth v. Rigg*, 84 A.3d 1080, 1084-85 (Pa. Super. 2014) (stating that "a petitioner must request leave to amend his petition in his Rule 907 response to raise new trial counsel ineffectiveness claims").

Generally, claims raised in an unauthorized supplement to a PCRA petition are subject to waiver. *Commonwealth v. Reid*, 99 A.3d 427, 437 (Pa. 2014). However, the PCRA court can "implicitly" permit an informal amendment where it does not strike the supplemental filing, and it considers the supplemental claim prior to disposing of the PCRA petition. *Commonwealth v. Brown*, 141 A.3d 491, 503 (Pa. Super. 2016); *see also Commonwealth v. Boyd*, 835 A.2d 812, 816 (Pa. Super. 2003) (holding that "by permitting Appellant to file a supplement, and in considering the supplement, the PCRA court effectively allowed Appellant to amend his petition to include those issues presented in the supplement"). Because the PCRA court addressed Appellant's ineffectiveness claim in its Rule 1925(a) opinion and did not strike Appellant's filing, we conclude that the PCRA court implicitly permitted Appellant to amend his PCRA petition to include this claim. *See Brown*, 141 A.3d at 503. Accordingly, we decline to find waiver.[9] *See id.*; *Boyd*, 835 A.2d at 816.

_____

[9] In *Commonwealth v. Bradley*, 261 A.3d 381 (Pa. 2021), our Supreme Court held: "[A] PCRA petitioner may, after a PCRA court denies relief, and
*(Footnote Continued Next Page)*

In addressing this issue, the PCRA court incorporated by reference its rationale from the July 22, 2022 order denying Appellant's PCRA petition. *See* PCRA Ct. Op., 10/18/22, at 1-2 (citing Order, 7/22/22). Specifically, the PCRA court explained:

> [Appellant] is now claiming in his response that counsel was ineffective for failing to file a pre-trial *habeas corpus* petition based on his claim that the Commonwealth relied on hearsay evidence at the preliminary hearing to establish a *prima facie* case, citing to ***Commonwealth v. McClelland***, 233 A.3d 717 (Pa. 2020). This contention is without merit. In ***McClelland***, the Pennsylvania Supreme Court held that the Commonwealth may not establish a *prima facie* case against a defendant relying on hearsay alone. However, "the Supreme Court did not intend to extend ***McClelland's*** holding to cases such as this one, where the complained-of defect in the preliminary hearing is subsequently cured at trial." [(***Rivera I***)]. "Once [the defendant] has gone to trial and been found guilty of the crime, any effect in the preliminary hearing is rendered immaterial[.]" ***Commonwealth v. Tyler***, 587 A.2d 326, 328 (Pa. Super. 1991). In the instant case, [Appellant's] trial cured any defect that may have occurred at the preliminary hearing. As [Appellant's] contention is without arguable merit, it fails to meet the first prong of the ineffectiveness standard.

Order, 7/22/22, at 1-2.

---

after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal." ***Id.*** at 401 (footnote omitted and emphasis added). Herein, Appellant challenges Trial Counsel's representation, and Appellant has not claimed PCRA Counsel's ineffectiveness nor asserted a layered claim of ineffectiveness. Accordingly, the holding from ***Bradley*** is not applicable. ***See id***; ***see also***, ***e.g.***, ***Commonwealth v. Crumbley***, 270 A.3d 1171, 1175 (Pa. Super. 2022) (explaining that pursuant to ***Bradley***, "layered claims of ineffective PCRA counsel may now be raised for the first time on appeal if that is the earliest practical opportunity to do so.").

- 15 -

After review, we agree with the PCRA court that Appellant's claim regarding trial counsel's alleged ineffectiveness at the preliminary hearing lacks arguable merit. The record reflects that after the preliminary hearing, Appellant's case proceeded to trial, and the jury found him guilty of murder. *See* N.T., Trial, 11/20/19, at 3-4; Sentencing Order, 12/31/19. Any defect in the preliminary hearing was rendered immaterial by the guilty verdict. *See Rivera I*, 296 A.3d at 504; *Tyler*, 587 A.2d at 328; *see also Commonwealth v. Rouse*, 1392 EDA 2022, 2023 WL 3431251, at *11 (Pa. Super. filed May 12, 2023) (unpublished mem.) (concluding that despite the holding in *McClelland*, any defect in the defendant's preliminary hearing was cured at trial).[10] As such, Trial Counsel's failure to file a petition for *habeas corpus* regarding the Commonwealth's reliance on hearsay at the preliminary hearing was immaterial, and Trial Counsel cannot be deemed ineffective for failing to raise this claim. *See Commonwealth v. Monaco*, 869 A.2d 1026, 1031 (Pa. Super. 2005) (holding that counsel cannot be deemed ineffective for failing to raise a meritless a claim). Accordingly, Appellant is not entitled to relief.

Further, Appellant did not challenge the PCRA court's order granting PCRA counsel's motion to withdraw or the order dismissing Appellant's PCRA petition on any basis other than the allegation that Trial Counsel was

---

[10] *See* Pa.R.A.P. 126(b) (stating that this Court may cite to non-precedential decisions filed after May 1, 2019 for their persuasive value).

ineffective for failing to challenge the Commonwealth's reliance on hearsay at the preliminary hearing. Because we conclude that this issue is meritless, Appellant has presented no basis upon which to disturb the PCRA court's order granting PCRA Counsel's motion to withdraw or dismissing the PCRA petition. *See Rykard*, 55 A.3d at 1184. Accordingly, Appellant is not entitled to relief. *See id.*

**Appointment of Counsel**

In his remaining issue, Appellant argues that he had a right to counsel in litigating his PCRA and PCRA appeal. Appellant's Brief at 25. Further, Appellant asserts that the PCRA court erred when it denied Appellant's request to appoint new counsel. *See id.* at 31.

The Commonwealth contends that because PCRA Counsel was permitted to withdraw pursuant to *Turner*/*Finley*, Appellant was no longer entitled to appointed counsel. *See* Commonwealth's Brief at 24.

Upon review, we conclude that Appellant's argument presents two separate issues: (1) Appellant's right to counsel under the PCRA; and (2) the PCRA court's order denying Appellant's motion for the appointment of new counsel.

An indigent PCRA petitioner has a rule-based right to the appointment of counsel in litigating his first PCRA petition, and, generally, this right includes representation in an appeal from the disposition of a first PCRA petition. *See* Pa.R.Crim.P. 904(C); (F)(2). However,

when counsel has been appointed to represent a petitioner in post-conviction proceedings as a matter of right under the rules of criminal procedure and when that right has been fully vindicated by counsel being permitted to withdraw under [**Turner**/**Finley**] new counsel shall not be appointed and the petitioner, or appellant, must thereafter look to his or her own resources for whatever further proceedings there might be.

**Commonwealth v. Maple**, 559 A.2d 953, 956 (Pa. Super. 1989) (emphasis added; footnote omitted).

Here, the only challenge Appellant preserved relative to the order granting PCRA Counsel's petition to withdraw under **Turner**/**Finley** was Appellant's assertion that Trial Counsel was ineffective at the preliminary hearing. **See** *Pro Se* Response to Rule 907 Notice. In light of our conclusion that there is no merit to this claim, Appellant has presented no basis upon which to disturb the PCRA court's ruling on PCRA Counsel's motion to withdraw pursuant to **Turner**/**Finley**. Indeed, there were no meritorious issues, and "once the [PCRA] court permits PCRA counsel to withdraw after filing a **Turner**/**Finley** 'no-merit' letter, an appellant is no longer entitled to the appointment of counsel on appeal." **Commonwealth v. Shaw**, 217 A.3d 265, 268 n.3 (Pa. Super. 2019); **see also Rykard**, 55 A.3d at 1183, n.1 (explaining that if PCRA counsel is permitted to withdraw pursuant to **Turner**/**Finley**, new counsel shall not be appointed, and the appellant must look to his own resources for future proceedings). Accordingly, Appellant was not entitled to counsel. **See Shaw**, 217 A.3d at 268 n.3; **Maple**, 559 A.2d at 956.

With respect to the PCRA court's denial of Appellant's request for the appointment of new PCRA counsel, we conclude that there was no error because Appellant was not entitled to the appointment of counsel after PCRA Counsel was permitted to withdraw. **See Shaw**, 217 A.3d at 268 n.3; **Maple**, 559 A.2d at 956.

On this record, we conclude that Appellant is not entitled to relief. For these reasons, we affirm the order denying Appellant's PCRA petition.

Order affirmed. Jurisdiction relinquished.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 12/28/2023